## Case No. 15,560.

UNITED STATES v. LANGTON et al.

[5 Mason, 280.] [1]

Circuit Court, D. Massachusetts. May Term, 1829.

TRUSTEE PROCESS — DECLARATIONS IN ANSWER — INSOLVENCY—PRIORITY OF UNITED STATES IN PAYMENT—ASSIGNMENT—INTENT.

1. Under the trustee process of Massachusetts by statute of 1794, c. 65, if the trustee swears he has no goods, effects, or credits of the debtor in his hands, he is entitled to be discharged, unless, from other parts of his disclosure, that averment is overthrown.

[Cited in Gordon v. Coolidge, Case No. 5,606.]

[Cited in Crossman v. Crossman, 21 Pick. 24.]

2. Where an assignment does not, on its face, purport to be of all the debtor's property, it is,

[1] [Reported by William P. Mason, Esq.]

incumbent on the United States, if they insist on a priority of payment under the act of congress of 1799, c. 128, § 65 [1 Story's Laws, 630; 1 Stat. 676, c. 22], to establish that it does, in fact, contain all the debtor's property.

[Cited in Farwell v. Cohen, 28 N. E. 39.]

3. A small portion left out by mistake or fraud, will not defeat the priority of the United States.

[Cited in Farwell v. Cohen, 28 N. E. 39.]

4. An assignment of all the debtor's property in a schedule referred to, which enumerates only specific property, and does not purport to be all, affords no presumption that it is all the debtor's property, or a general assignment.

[Cited in Bock v. Perkins, 139 U. S. 638, 11 Sup. Ct. 680.]

5. One of the trusts of an assignment was to pay "8,400 dollars on custom-house bonds, on which M. is surety." M. being one of the assignees; he was surety on bonds to a less amount; but the debtor in fact owed bonds to the custom-house, to the amount of 8,257 dollars; it was *held*, that no bonds were included in the trust but those on which M. was surety.

6. The trustee process lies against assignees in favour of the United States, where a debtor makes an assignment of his property in trust to pay custom-house bonds, or other debts due to the United States, to attach the funds to the amount of such trust, in the hands of the assignees, notwithstanding at law, the assignment passed the property clothed with the trust, to the assignees.

7. Quære, whether parol evidence is admissible to explain the intent of the parties in the above assignment, so as to show whether all bonds were intended to be included, or those only, on which M. was surety.

[Cited in Gordon v. Coolidge, Case No. 5,060.]

Suit upon the trustee process of Massachusetts by statute of 1794, c. 65 [1 Story's Laws, 630; 1 Stat. 676, c. 22]. The only questions in the cause arose upon the answers of the trustees.

Mr. Dunlap, U. S. Dist. Atty.
Fletcher & Rand, for trustees.

STORY, Circuit Justice. This case comes before the court under the trustee process of Massachusetts (Act 1794, c. 65), the main object being to charge the trustees as garnishees of the principal debtor [Samuel Langton], by attaching his funds in their hands. The case turns wholly upon the answers of the trustees. They have come into court and have declared, that they had not in their hands or possession at the time the writ was served on them, any goods, effects, or credits of the principal, and they have submitted themselves to an examination on oath touching the premises. They are therefore entitled by the very terms of the statute to a discharge with costs, "if, upon such an examination, the said declaration shall appear to the court to be true." I cannot agree to the suggestion at the bar in the broad and unqualified manner in which it is made, that persons, sued as trustees, are in all cases to be charged by the court, unless they clearly discharge themselves. Where they expressly swear that they have no goods, effects, or credits in their hands or possession of the debtor, that declaration must be taken for true, unless the court can clearly see, from the subsequent examination, that it is untrue. Where they neither expressly admit nor deny their liability, but put all the facts before the court, and leave the latter to decide the matter of law arising thereon, there must be sufficient upon the face of those facts to justify the court itself in pronouncing a judgment, which shall charge them as trustees. If those facts, fully and sincerely disclosed, leave the matter in doubt, for myself I cannot perceive how a judgment, charging them, can be pronounced, upon any acknowledged principles of law. I agree, that doubtful expressions may be construed most strongly against the trustees, if they admit of two interpretations; but they are not to be tortured into an adverse meaning or admission. The answers are not to be more rigidly, or differently construed, from what they would be in a bill in chancery. If the answers are not full, the plaintiff is at liberty to propound closer interrogatories; but he is not to charge parties upon a mere slip or mistake of certainty, or because they do not positively answer, what in conscience they do not positively know. The law would otherwise be a snare, which might entrap them to their ruin, and involve them in a double responsibility and payment. And such, I conceive, is the real doctrine in the state court, notwithstanding some general expressions, which have been quoted, and are applicable to special cases. Sebor v. Armstrong, 4 Mass. 206; Cleveland v. Clap, 5 Mass. 201; Whitman v. Hunt, 4 Mass. 272; Hatch v. Smith, 5 Mass. 42, 49; Gordon v. Webb, 13 Mass. 215.

By the answers of the trustees it appears, that Langton (the principal debtor) being in failing circumstances, on the 5th of January, 1828, executed an assignment, by indenture, tripartite, of certain property to the trustees, upon certain trusts stated in the deed of assignment. It begins by reciting, that Langton is indebted in large sums of money to the parties of the second part (the trustees), and third part (general creditors), and that W. Monroe (one of the trustees) is liable, as indorser and surety of Langton, to pay large sums of money, and also has lent and accommodated him with money, a schedule of which sums, debts, and liabilities, is annexed, marked A. It then farther recites, that Langton is possessed of certain goods, wares, merchandises, choses in action, credits, and demands, and other property, schedules whereof are annexed, marked C. D. It then recites the desire of Langton to secure to Monroe a full indemnity for all his liabilities as indorser and surety, and payment also of monies loaned, and an equal distribution of the property which shall remain among the other parties of the second and third parts, so far as it will extend, and they are ready to accept and release Langton, as far as the same will go. Afterward there follows an assignment

to the trustees of all the goods and other property, in the Schedules C and D, with a moiety of the brig Dido, a policy on her cargo, and the household furniture of Langton, at No. 1, Temple Street. The trusts are declared to be, to collect the debts, &c. and sell the property, &c. and to apply the proceeds as follows: "In the first place, to apply the said trust monies to the payment and discharge of $8,400. due for custom-house bonds and liabilities, as mentioned in said Schedule A; and also to the payment and discharge of the three sums of money mentioned in the said Schedule A as being lent and accommodated to said Langton, amounting in the whole to the sum of $9,-784.69, monies so lent, &c. as stated in said Schedule A, and which said three sums of money, together with the said amount of custom-house bonds, amounts in all, as near as can be ascertained, to the full sum of $18,184.69, which amount is to be paid and satisfied in full." This is the material clause on which one of the questions made at the bar turns; the other clauses require no particular consideration. The Schedule A begins as follows: "Schedule of claims and demands due to Washington Monroe from Samuel Langton, custom-house bonds and notes by him indorsed for said Langton, as monies borrowed to be paid in full. Amount of custom-house bonds upon which Washington Monroe is surety, $8,400. Notes payable to Washington Monroe and by him indorsed for said Langton as follows." Then follows a special enumeration of them; and then a memorandum of monies borrowed, and other notes, &c. in the whole amounting with the custom-house bonds to $32,084.-96. Schedule B contains the debts due to other creditors. The custom-house bonds owing by Langton amounted in fact to the sum of $8,257.43; and Monroe was surety upon all of them, excepting one for $1,752, which is now in suit. None 'of them were due at the time of the assignment; but all those upon which Langton is surety, amounting to $6,505.43, have since been paid. The whole amount of the property assigned to the trustees by the assignment, has produced less by $10,000, than the debts and liabilities of Monroe provided for in the assignment.

The trustees, upon their disclosures, are certainly entitled to be discharged from the suit, unless some one of the grounds contended for in argument, on behalf of the United States, can be maintained in point of fact and law. They explicitly deny, that they have any goods, effects, or credits of Langton in their hands or possession; and as no evidence aliunde is admissible by law, to control or contradict their answers, the onus probandi is on the United States, to extract an opposite conclusion from the facts stated in them.

Two grounds are contended for by the United States. In the first place, that the assignment is an assignment of all the property of Langton; and if so, the priority provided for by the act of 1799, c. 128, § 65 [1 Story's Laws, 630; 1 Stat. 676, c. 22], attaches in favour of the United States. I agree at once to the reasoning at the bar, that if the assignment be in fact of all the debtor's property, although it does not so appear upon the face of the instrument, the priority of the United States attaches. The same rule applies if a small part be left out for the purpose of fraudulent evasion of that priority. This doctrine is fully supported by the cases of U. S. v. Clarke [Case No. 14,807]; U. S. v. Hooe, 3 Cranch [7 U. S.] 73, 91; U. S. v. Howland, 4 Wheat. [17 U. S.] 108, 115; and Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 439. But the difficulty is, that the present assignment purports on its face to be an assignment, not of all the debtor's property, but of all the goods, &c. in the Schedules C and D; and these schedules do not purport to be all the property of the assignor, but of certain specific effects. In such a case (as was justly said by the court, in [U. S. v. Howland] 4 Wheat. [17 U. S.] 108, 116), the presumption must be, that there is property not contained in the deed, unless the contrary appears. The onus probandi is thrown on the United States. Now there is not only no proof in the case, that this assignment does contain all Langton's property; but both the trustees swear, that they believe it does not contain all his property; and there is not a shadow of evidence, that there was a suppression of any of his property, with a fraudulent design to evade the rights of the United States. On the contrary, it does appear that the parties at the time had no distinct knowledge of the actual sums owing on bonds at the custom-house. We may, therefore, upon the mere footing of authority dismiss this ground of argument as untenable.

But in the second place it is contended, that if this be not a general assignment, there is an express provision giving priority of payment out of the funds, to the custom-house bonds, of which the United States are entitled to avail themselves in the present form of suit. One answer urged on behalf of the defendants to this ground is, that the trustee process furnishes no means to enforce such a right, even if it exists. The argument is this. The trustee process can only reach goods, effects, or credits of the debtor himself. If the assignment is good and valid in point of law, it passes the goods &c. to the trustees, as their property, to be by them applied to the trusts stated in the assignment. The whole reasoning, on behalf of the United States, assumed, that the assignment is good and valid; and if so, the trust fund, to the amount of the custom-house bond provided for by it, is a trust fund belonging to the United States, and not to the debtor; and the United States cannot attach their own property by this process in the hands of the trustees. And reliance is

placed on the case of Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386, 438, 439, where it was held by the supreme court, that even a general assignment passes the property to the assignees, and gives a priority of payment only out of the fund, and does not, pro tanto, defeat the assignment. To every thing stated in that opinion, I give my cordial assent, knowing that it was prepared upon very full deliberation of the court. I agree that the present assignment is good and valid, in point of law, to pass the property to the assignees. But the conclusion contended for by the defendants' counsel does not follow upon such an admission. If the United States had been called upon to assent, and had in fact assented, to the trusts created by the assignment so as to create a privity between themselves and the assignees, there might be great force in the argument. But until such assent, actual or constructive, the property was, by operation of law, a resulting trust for the assignor. If A. transfers his goods or money to B., to be delivered over or paid to C., unless C. assents, expressly or impliedly, to the bailment or trust, the trust is a resulting trust for A. If C. refuses to receive the goods or money, A. may recover them back for his own use. In such cases, the law implies a resulting use or trust for the benefit of the grantor, where the object of the trust has wholly failed. This is, as I think, the natural result of the general principles of law upon this subject. Our state decisions in relation to the trustee process, uniformly assume the doctrine to be sound, and make no distinction, whether the goods, credits, or effects in the hands of the trustee are equitable or legal; whether they are a naked debt or bailment, or a resulting trust, where the assignment, pro tanto, has become inoperative, being good and valid in its general structure. In every case where a general assignment is made for the benefit of creditors, and an attachment under this process intervenes, before all the creditors have become parties, the assignment is not held utterly void, but is held inoperative only as to the proceeds not covered by the debts of the antecedent creditors; and if any thing remains after such attachment, that may go, under the assignment, to any creditors who subsequently become parties. In short, the trust created by the assignment is defeated only pro tanto. And a creditor, who refuses to come in under the trust, may sue in the same manner as if he were not named or included in it. It appears to me, that wherever the property of a debtor is in the hands of an assignee under trusts, which are exhausted, or have failed, so that the assignee holds the property for his benefit by operation of law, the trustee process is a proper process to reach it. The statute of 1794, c. 65, seems to me to have had such cases peculiarly in its eye in creating the remedy. The words in the preamble clearly cover them. They are "goods, effects, and credits," of the debtor "so intrusted and deposited in the hands of

others, that the same cannot be attached by the ordinary process of law."

Another answer suggested at the bar is, that the United States are not, upon the face of this assignment, cestuis que trust; but that the trust is created in favour of Monroe to discharge the custom-house bonds, and thus to exonerate him from his suretyship. But, assuming this construction of the instrument to be correct, (on which I give no opinion,) it would not aid the case of the defendants. If the debtor has confided his property to them to fulfil certain trusts, the assignees are bound to fulfil those trusts, and cannot apply it to other purposes. If they should refuse so to do, and the cestui que trust cannot enforce it, or the trustee has failed; they must be charged as trustees of the debtor, because it remains, in equity, his property, by way of resulting trust or indebtment. If they should not refuse, then the property is a fund in their hands applicable to the trust, and they are merely his agents to pass it over to the creditors. Now in this very process the United States, supposing all custom-house bonds are included in the trust, seek to have the acknowledged trust property of the debtor applied to the very purpose he intended; and I can perceive no solid objection upon reason or authority, or even technical grounds to refuse it. It is the debtor's property "intrusted" to them for this purpose, and not attachable by the ordinary process of law. In Jarvis v. Rogers, 15 Mass. 389, 414, Mr. Chief Justice Parker, in delivering the opinion of the court, said: "I have neither heard nor seen any judicial decision, tending to prove, that if a creditor accidentally gets possession of his debtor's goods, or if a debtor commits them to him on a particular trust or confidence, the creditor has a right to retain them as security for his debt. On the contrary, any other creditor may attach them, if they can be seized by an officer; or the creditor may be charged as trustee, if they cannot be come at to be attached."

The strongest objection to a recovery by the United States yet remains for consideration. It is, that the assignment did not mean to provide for the payment of all custom-house bonds owing by Langton; but only for those, on which Monroe was surety; and all these have been paid without scruple. It has been said, that Langton might well be presumed to intend to cover all bonds, because it would save him from imprisonment on execution at the suit of the United States, from which he would not be entitled to be discharged, as in cases of private debts upon taking the poor debtor's oath; but only by the special authority of the secretary of the treasury under the act of 1798, c. 66. I do not know that a court is at liberty to indulge any such presumption, unless the words of the instrument itself justify it upon a plain construction of their import. Let us attend then to the words of the present assignment. The direction is "to apply the trust monies to the

payment and discharge of $8,400 due for custom-house bonds and liabilities, as mentioned in said Schedule A." By turning to that schedule we find the description to be, "amount of custom-house bonds, upon which Washington Monroe is surety. $8,400." So that the schedule does not include all custom-house bonds; but those only, upon which Monroe is surety. If, therefore, we take the general clause as it is controlled and explained by the schedule, (as we are bound to do,) it is manifest that the custom-house bonds, alluded to, are those only, on which Monroe is surety. The preamble to the assignment fortifies this conclusion; for it recites as a main object the desire to secure Monroe for his liabilities as indorser and surety; and the whole structure of the assignment shows, that he was a favored creditor, not merely as surety, but as indorser. He is not yet indemnified to the amount of $10,000.

But it is argued, that the sum provided for, viz. $8,400, is more than the amount due on the bonds on which Monroe is surety, and that the actual amount of all the custom-house bonds approaches nearer the sum, viz. to $8,-257; and therefore the presumption is, that all bonds were intended to be included. Now, in answer to this, there is force in the remark made at the bar, that the sum seems put down as a mere estimate, and not as the exact amount; for the terms of the assignment are, that "the three sums of money, together with the said amount of custom-house bonds, amount in all, as near as can be ascertained, to the full sum of," &c. Besides, in either view, there is a mistake as to the amount of the custom-house bonds. If the amount of all the bonds had been exactly $8,-400, there might have been a stronger ground for argument. If, then, the sum be mistaken, and we resort to the other words of the instrument to qualify or explain the intention, we there find the bonds described to be those, on which Monroe is surety. The mistake is, therefore, corrected by the context. Where there is any repugnancy or mistake in a description, if sufficient certainty as to the thing intended on the whole appears, the repugnancy or mistake does not vitiate. Taking the whole description together, it will run thus: "$8,400 for custom-house bonds, upon which W. Monroe is surety;" and upon such an assignment, intended for his special protection, there cannot, I think, be a legal doubt, that the mistake of the amount must yield to the certainty of the other part of the description. The whole provision must otherwise be rejected for utter uncertainty, and Monroe be left without any security, since the misdescription as to the amount of all the bonds owing to the United States is equally clear; or we must resort to parol evidence to explain the latent ambiguity. See Colpoys v. Colpoys, 3 Jac. 451, 462.

My opinion is that there is no necessity to resort to such evidence in this case. But if resort is to be had, the answers of the trustees, and particularly of Monroe, are entirely decisive. He explicitly swears, that no other bonds, than those on which he was surety, were in the contemplation of the parties, or intended to be provided for; and that at the time of the assignment, the exact amount of these was not known to them. This is not all. The onus probandi is on the United States in this case, to establish, that the bond now in controversy is covered by the assignment; for otherwise, Monroe has a right to retain for the deficiency due to him. There is an acknowledged mistake in the amount of the bonds in the description. The United States must show, either that there is sufficient certainty on the face of the instrument to establish their claim, (which has not been done,) or that parol evidence is admissible to explain the intent; and then that very evidence overthrows their claim.

Upon the whole, my opinion is, that the trustees are entitled to be discharged, and judgment must be entered accordingly. Trustees discharged.