BENJAMIN B. MUSSEY & OTHERS *v.* MORRILLO NOYES & C. P. BALDWIN.

*Assignments. Construction of.*

A deed of assignment by a debtor for the benefit of creditors thus specified the powers of the assignees. They "shall forthwith take possession of the same, and faithfully, and as soon as practicable, and in the most beneficial manner, dispose of and convert into money the said real and personal estate, and collect the said choses in action, and apply the money therefrom arising (after paying expenses,) in payment, and discharge the debts due the assignees, and for which they are holden as sureties, and pay the surplus to Low, (the assignor,) or to such persons as he shall appoint,"—*Held*—

I. That this did not give the assignees power to sell on credit, nor

Mussey et al. *v.* Noyes et al.

II. Power to compound with the debtors.

III. That it did not involve a violation of the statute against fraudulent convey-ances, nor

IV. A violation of the statute of 1843, against *general* assignments for the benefit of creditors.

The characteristics which must determine whether an assignment is general or special.

TRESPASS for taking and carrying away certain articles of personal property.

Plea, *not guilty* and trial by jury.

On the trial the plaintiffs read in evidence the written assignment of one Asa Low, and proved the execution and delivery of the same; and also offered evidence tending to prove that at the time of the delivery of said assignment, said Low was indebted to the assignees in about the sum of forty thousand dollars, and the amount which the assignment was next made to secure was about the sum of forty thousand dollars, and it was conceded, that the debts mentioned and described in said assignment, were truly stated therein; and the plaintiffs further proved, that at the time of the delivery of said assignment, said Low was the owner of other property, not included in said assignment, consisting of some land and personal property, but mostly of debts due to him, to a large amount, exceeding fifteen thousand dollars in value; that on the execution and delivery of said assignment, the plaintiffs, as assignees, took possession of all the property therein named, and procured an inventory and appraisal to be made thereof, and held exclusive possession and control thereof, and proceeded to dispose thereof, as fast as could prudently be done, and in less than ten months sold all of the same, except that taken by the defendants, and with the avails, paid, agreeably to said assignment, an amount over eighty-four thousand dollars ; that while the plaintiffs were thus in possession of, and disposing of said property, in April, 1852, the defendants took and carried away the property in the declaration mentioned ; and that the said assignees have not yet been paid the debts due them from said Low.

The defendants gave testimony to prove, that at the time of the making of said assignments, said Low was indebted to the defend-

ant, Noyes, in the sum of about three thousand dollars, and that said Noyes sued out an attachment on said debt, in due form of law, and the same was by his direction, served by the defendant, Baldwin, as deputy sheriff, by attaching the property in plaintiffs' declaration mentioned, as the property of said Low; that said attachment was duly returned and entered in court, and is still pending.

The defendants also offered evidence tending to prove, that said assignment was fraudulent in fact, as to the creditors of said Low.

The plaintiffs also offered evidence tending to prove, that said assignment was not fraudulent, but in good faith, and there was testimony tending to show that said Low, at the time of said assignment, was in failing circumstances, and unable to pay his debts, and it appeared in proof, among other things, that the assignees, after taking possession of the property named in the assignment, continued to run the paper mill, for the purpose of running out the stock on hand, and that they also purchased some stock, which they worked, that was not necessary for working that off on hand; but it also appeared, that immediately after the assignees had so taken possession of the property, they called a meeting of the creditors of Low, and that that meeting was held and was very generally attended, and among others by an attorney of defendant, Noyes, and the different modes of managing and disposing of the property were fully discussed and talked over; and that with the assent, and by the advice of the creditors, the assignees run the mill as they did, and as is above stated, both for the purpose of working up the paper mill stock then on hand, and for the purpose of aiding in the disposal of the stock of goods then on hand in the store.

It also appeared, that most of the personal property was sold at auction, and in making sales, and whenever it was desired, a credit was given, which was generally the case.

It also appeared, that such sales were made on credit, under the advice, and with the consent of the creditors of said Low, for the reason that it was customary to make such sales on credit in the country, and that thereby the property could be disposed of at higher prices; and it also appeared that the assignees had not lost, or failed to collect the avails of any sale thus made on credit.

It also appeared, that at the time of causing the assignment to be recorded in the town clerk's office, one of the assignees, B. B. Mussey, caused a suit to be commenced against said Low, in the name of Stearns, upon a note of over $25,000, held by said Mussey against said Low, and caused to be attached thereon a portion of the property of said Low, other than the debts due to him, which was not included in said assignment, being a quantity of wood, &c., of the value of about $500, and also caused a return to be made on said writ, attaching all of said assigned property which was in Bradford, and could be attached by a copy in the town clerk's office, under the statute. But it appeared, that said Mussey was a resident of Boston, and was a creditor of said Low, to the amount of some $38,000, and that he was induced to commence this suit as a matter of precaution, having doubts what construction would be given by the courts of Vermont, to the statute of 1843, in respect to general assignments, and it appeared that said suit was still pending. But upon the trial no question was made or reserved by the defendants, upon any of the above facts, except so far as they were claimed to have a legal tendency to prove that the assignment was fraudulent, *in fact*, in respect to the creditors of said Low. And in that respect the court gave to the jury full instructions, both as to the general rules of law in respect to fraud in fact, and in respect to the particular application of those rules to the above facts, to all which no exception was taken.

The defendants requested the court to charge the jury, that said assignment was void as to the creditors of said Low, and that the plaintiffs could not recover.

The court,—COLLAMER, J., presiding,—declined so to charge, but charged the jury to find for the plaintiffs, unless they found the assignment fraudulent in fact, giving to the jury instructions as to fraud in fact, to which part of the charge there was no exception. But to the decision of the court, declining to hold said assignment void, the defendants excepted.

The jury returned a verdict for the plaintiffs.

*L. B. Peck* and *W. W. Peck* for defendants.

I. The assignment to the plaintiffs is void under the statute of frauds. Comp. Stat.

This act is in substance a re-enactment of 13 Eliz. chap. 5, and the latter is a mere declaration of the common law; at common law, and under this act, an assignment made by a debtor under insolvent circumstances, for the benefit of creditors, is void if it creates a trust in favor of the debtor, or empowers the assignee to sell on credit.

II. The present assignment creates such a trust. The conveyances were intended to subserve different interests, are to different parties, between whom there is no privity of contract, and are several and successive. Moreover the instruments on their faces indicate that they are independent of each other. *U. States* v. *Hooe et al.*, 3 Cranch 73. *U. States* v. *McClellen et al.*, 3 Sumn. 345. *Dana, Admr.* v. *Lull*, 17 Vt. 390.

If the assignment is otherwise bad, it is not aided by the fact, that the assignee is a creditor.

III. The assignment empowers the assignees to sell on credit. *Hyslop* v. *Clarke*, 14 Johns. 458. *Riggs* v. *Murray*, 2 Johns. Ch. 565. *Austin* v. *Bell*, 20 Johns. 442. *Meacham* v. *Stearns*, 9 Paige. *Strong* v. *Skinner*, 4 Barb. 546. *Barney* v. *Griffin*, 2 Comst. 365. *Seaving* v. *Brinckerhoff*, 5 Johns. Ch. 325. 6 Barb. 981. 9 Barb. 255. 6 Hill 438. 11 Wend. 187. 21 Pick. 185.

IV. The assignments are void under the act of 1843, as a general assignment. 3 Sumn. 345. 3 Cranch 73, before cited.

*Converse & Barrett* and *Washburn & Marsh* for plaintiffs.

There is no error in the ruling of the court below.

I. If the instrument objected to in the court below, and admitted by the court, is to be divided into distinct parts, and considered as separate and distinct stipulations or contracts, then the plaintiffs insist that the first paper is a simple *pledge* of the property named, to the plaintiffs, with authority to sell the same. *Fletcher* v. *Howard*, 2 Aik. 115.

II. If not technically a "*pledge*," it is a mortgage, with authority to sell and pay themselves. *Leitch* v. *Hollister*, 4 Comstock 211. If either a *pledge* or a *mortgage*, the plaintiffs had a lien upon the property, at least till their debts were satisfied. *Wood* v. *Dudley*, 8 Vt. 430. *Hutchins* v. *Gilchrist*, 23 Vt. 83.

III. That a debtor has a right by law to *pledge* or mortgage personal property to a creditor, as security, if done in good faith,

does not admit of a doubt. *D'Armay* v. *Cheeseman,* 13 M. & W. 795. 8 N. H. 347. 13 N. H. 298.

The amount of property pledged or mortgaged, whether the whole or part of the debtor's property, can make no difference, provided it is *bona fide.*

That thereby other creditors are prevented from attaching it, cannot make it fraudulent, as a debtor has a right to prefer creditors, and creditors have a right to be preferred. 4 Comstock 211. 6 Mass. 339. 17 Vt. 310.

The amount of property pledged or mortgaged, being disproportionate to the debt secured, thereby can only furnish evidence of *fraud in fact.* It is simply a badge of fraud *per se.* 13 M. & W. 795.

The balance remaining in the hands of the pledgee or mortgagee, can be reached by other creditors. 6 Mass. 339. 4 Comstock 211.

IV. If this surplus or balance could be reached by the creditors of the debtor, it must be because it belongs to the debtor, and he could recover it. It is then, such right or interest, or property as the debtor could assign, sell or dispose of himself, and a transfer of such interest or property, by the debtor *bona fide,* to any other creditor, must be valid and legal.

V. It may, however, be contended that the document in question, is a technical " *assignment.*" If such is its legal character, we insist the decision of the court below is none the less correct.

The plaintiffs had a lien on the property till their debts were satisfied, at least, call the transfer by whatever name you please, the jury having found there was no fraud *in fact.*

But if an " *assignment,*" it is such by virtue of the accompanying papers. All these papers being cotemporaneous in their execution and delivery, and relating to the same subject matter, must be construed together in determining the character of the transaction. *Holbrook* v. *Finney,* 4 Mass. 556.

In this view of the case, there can be no legal objection to it as a technical " *assignment.*"

The jury having negatived all *fraud in fact,* there can be no *legal fraud.* 6 Mass. 339. 17 Vt. 310.

(1.) Because, the assignment, being to creditors themselves,

for the security of their claims, as well as those of other credit-ors, no legal fraud attaches.    23 Vt. 82.

  If the debts due the assignees are made a mere *cloak*, to cover the property of the assignor, and keep it from his creditors, such would be fraudulent *in fact*.    It must be a question to the jury.

  (2.) The assignment is every way unexceptionable, though it had been to trustees and not to creditors.    It appropriates the en-tire property assigned to the payment of his debts.    6 Mass. 339.    17 Vt. 310.

  There is no reservation to the assignor of any interest. in, or benefit from the same, till all his debts are paid.

  No resulting trust.

  (3.) It is in no way obnoxious to the statute of 1843, against general assignments.    8 N. H. 347.    8 N. H. 536.    13 N. H. 298.

  The opinion of the court was delivered by

  REDFIELD, Ch. J.  · This was a case involving the validity of a general trust assignment for the benefit of creditors.    The property assigned amounted to more than $80,000.    The facts necessary to the understanding of the case will appear in the course of the opinion.

  I. It is objected that the assignment is void, by reason of the as-signees having power to sell on credit.    Their powers are thus specified in the deed of assignment:    "Shall forthwith take pos-session of the same, and shall faithfully, and as soon as practi-cable, and in the most beneficial manner, dispose of, and convert into money, the said real and personal estate, and *collect the* said choses in action, and apply the money therefrom arising, (after paying expenses) in payment and discharge of *the* debts due the assignees, and for which they are holden as sureties, and pay the surplus to Low, (the assignor,) or to such persons as he shall ap-point."    This is the effective part of the deed in the first  part. The second part names certain sureties of the assignor to be next indemnified ; then three schedules of creditors who were to take the surplus, or a ratable portion, as the case may be, in succes-sion ; and if any surplus still remains, it is appointed to go to all the assignor's creditors ratably.

  Now, the words used in this instrument, "to convert into mon-ey, as soon as practicable, and in the most beneficial manner,"

would more naturally exclude the power of selling on credit, and especially where such a power was regarded as illegal. We must, to be reasonable, conclude the parties, by these general terms, intended a disposition of the property in good faith, and according to law; and for the faithful execution of such a trust the assignee is always liable to be called into a court of equity, at the instance of the *cestui que trust;* so that it cannot be argued with success, that these general terms confer upon the assignees an unlimited and irresponsible discretion to sell on credit, or not, and so virtually include such a power. We think such a power is neither expressly nor impliedly given; and the fact that such a course was pursued by the assignees, on their own responsibility, and by what they regarded as the consent of those interested, certainly cannot be taken for the practical construction of the contract, by the parties; for the very means the assignees adopted, in assembling the creditors to obtain their assent to the course, shows that they, and all concerned, understood they were departing from the terms and legal force of the assignment. *Meacham v. Stearns,* 9 Paige 398, is an express decision in favor of the above view; and if the New York courts, as is said, have recently adopted the opposite view, we can only say that, to us, the former determination seems the only sound and rational one.*

2. It is claimed that the deed of assignment contained a power to compound with the creditors, and so was void, upon that ground. But we find no such powers in the deed, unless it is to be inferred from the provision that the several creditors named in the schedules, should receive so much of the indebtedness of the assignor to them, as should appear to be due, " upon examination and settlement thereof." But this, it seems to us, can fairly import nothing more than the amount of their several debts. If any claim was at all of an unliquidated character, it could scarcely be described in more definite terms. We might content ourselves here; but as considerable discussion has been had at the bar upon the effect of such powers being contained in such a deed of as-

---

* NOTE.—The New York courts have finally, since the decision of this case, receded from their former ground, and now hold that an implied power to sell on credit, does not avoid the assignment, and have really assumed the same ground we do here. *Kellogg* v. *Slauson,* N. Y. Court of Appeals, Nov. 1854.

signment, it may be proper to add, that, in our opinion, if the power to sell on credit is to be understood as conveying with it the power to keep the business of the assignor for any time, and to any extent, on foot for his benefit, and measurably under his control, so that the effect of the assignment would be to create the assignee, the agent and trustee of the assignor, it would be altogether inadmissible, as was held by this court in *Dana* v. *Lull*, 17 Vt. 390, and in *Britnell* v. *Warren & Trustee*, Windsor Co. March, 1851. It is quite likely an express power to sell on credit should be held, in all cases to invalidate such an assignment, as an attempt to define and extend the power of the assignee, in particulars which should be referred to the exigency of circumstances, and the general equitable responsibility of such trustees. I should certainly, without more examination, incline to that opinion. This is undoubtedly the law of the state of New York, and I should not be inclined, at present, to question its soundness as to express power to sell on credit.

In regard to the power of agreeing with the creditors upon the amount due them, which is all that is here given the assignee, I do not myself, at present, perceive any possible objection to it, since it must be exercised in good faith, and with prudence and discretion, and the manner of the exercise approved by a court of equity. But if we are to understand, by compounding with the creditors, the conferring upon the assignee the power to buy up the debts which are confessedly due, for the benefit of the assignor, and upon the most favorable terms, it would certainly be as objectionable as any conceivable power or discretion to be reposed in the trustee, and would make him effectually the mere agent of the debtor. Such an arrangement would prove a most successful device to lock up one's property from creditors, and effectually put them at defiance, while the debtor held the beneficial use of the property.

3. We have found no difficulty with this case, as involving any violation of the general statute against fraudulent conveyances; and this, we think, must be the result equally, whether we treat the instrument as only conveying to the assignees a reasonable amount of the debtor's property, to secure them what he owed them, and what they were holden ultimately to pay; or whether we regard it as a general trust assignment for certain preferred cred-

itors, by classes, and ultimately for all the creditors, with an express stipulation to pay the balance to the assignor. Viewed in either light it is but the common case of allowing a debtor, in failing circumstances, to make preferences among his creditors; and this right, notwithstanding this statute, is too well settled to be now called in question. The assignment of a reasonable amount of one's property directly to one's creditors, as security, is not essentially different from any other mortgage or pledge of personal property, which does always put .the property beyond the reach of attachment in the ordinary mode. *Smith* v. *Niles*, 20 Vt. 315. But the right to make such an assignment is most unquestionable. (*Tompkins* v. *Wheeler*, 16 Peters 106; *Adams* v. *Blodgett*, 2 Wood & Minott 233; *Leitel* v. *Hollister*, 4 Comstock .211.) Assignments made directly to the creditors, so as to require them to name the trustee, and thus make him their man, instead of his being, as is too often the case, the mere creature of the assignor, are certainly entitled to the most favorable consideration of the courts.

We think, after careful examination of the papers executed in this case, and diligent comparison with the reported cases, that all the papers executed on the same day, and to effect the same general design, must be regarded as one transaction, one contract. The two principal deeds refer to each other, both antecedently and subsequently, and are obviously connected, and each but the complement of the other, as obviously as the two parts of scissors, or any other mechanical instrument, and each, without the other, is as manifestly imperfect, if not useless.

The important inquiry then arises, whether this assignment is void, under the statute of 1843. The statute is in these terms: " All general assignments hereafter made by debtors, for the benefit of creditors, shall be null and void, as against the debtors of such creditors." We think this undoubtedly refers to trust assignments, and not to an assignment directly to the creditors; for the expression, " for the benefit of creditors," seems to imply this; and, at first, I was half inclined to believe that one portion of this assignment—that which was for the security of the assignees themselves—under the peculiar circumstances of this case, might be saved from the operation of the statute, on that ground alone, as it undeniably might, if it stood alone. But further examination

and reflection satisfies me that, to be consistent with general prin-
ciples, we must hold the entire contract good or bad, in the gross—
at least so far as a statutory prohibition is concerned. This is
certainly the general rule in regard to all illegality in a contract;
and the decided cases upon this very point seem to me too explicit
to admit of much question. *Riggs* v. *Murray,* (2 Johns. Ch. R.,
565,) a case involving a very large amount of property, and, conse-
quently, having received the fullest consideration, seems altogether
in point, upon the question, whether that portion of the assignment
giving the assignees security first, for their own debts and those
for which they are liable, can stand, if the whole contract should
be regarded as coming within the prohibition of the statute. It is
the very case almost, *nomine mutato.* So, also, is the case of *Hy-
slop* v. *Clarke,* (14 Johns. 458.) Any number of cases, involving
the same general principle, may be readily found. We shall here
only refer to *Wakeman* v. *Grover,* 4 Paige 24; *Ames* v. *Blunt,* 5
Paige 13; *Pratt* v. *Adams,* 7 Paige 615, which are upon the sub-
ject of assignments in trust for creditors, and directly in point, to
show that such contracts, where in some points they contravene
the express provisions of a statute, must be regarded as wholly
void.

We come, then, directly to the question how far this assignment
is to be regarded as within the prohibition of the statute of 1843.
We have before intimated that this assignment, taken as a whole,
must be considered as in trust, for the benefit of creditors, within
the terms of the statute. The only remaining question, then, will
be whether this is a " general assignment." As was said by BEN-
NETT, J., in *Dana* v. *Lull,* 17 Vt. 390, an assignment of all one's
property, for the benefit of all one's creditors; is clearly a *general
assignment.* How much less will amount to that, seems not well
settled. The term general, as applied to assignments, does not
have reference, probably, so much to the proportion of creditors
as to the proportion of property. A late work upon this subject,
of some accuracy and thoroughness, (Burrill on Assignments,)
lays down the rule, as to the number of creditors, thus : " A gen-
eral assignment is understood to import a provision for a consider-
able number of creditors, or, at least for several, or more than
one," and refers to *Bourchand* v. *Dias,* where a trust assignment,
for the benefit of one creditor, was held not to come within the act

of Congress which we shall refer to hereafter. We may conclude then, that if a majority of the creditors are provided for, and all the property is assigned, the assignment is still general.

The great difficulty is, to know what proportion of property, less than the whole, shall still denominate the assignment general. The case of *The United States* v. *Hooe*, 3 Cranch 73, has been referred to upon this point; and it must be admitted, it is, in some respects, analogous. But the differences in the two statutes are considerable. In the act of Congress it is provided, that the United States' priority of lien, or right, shall attach where a debtor, " *not having sufficient property* to pay all his debts, shall have made a voluntary assignment thereof, for the benefit of his creditors." This, in terms, seems to confine the assignment *to all the property*. " Thereof," must refer to all the property which the debtor had, *" not having sufficient* to pay all his debts." And so the U. S. Supreme Court held. Chief Justice MARSHALL, however, says, even in such a case, "If a trivial portion of an estate should be left out, for the purpose of evading the statute, it would be considered a fraud upon the law, and the parties would not be enabled to avail themselves of such a contrivance." But in the case then before the court, the assignment was, most obviously, but a partial one, the debtor retaining enough property to proceed with his business, and actually continuing it for nearly a year, and until his death. But when the great bulk of one's estate is assigned, and his entire business is closed up, at once, by the assignment, it becomes a difficult question to determine how much and what property shall be excepted out of the assignment, to render it not general, but partial. And if the law has fixed no definite rule upon this subject—and I can find none—it will have to be submitted ultimately, in some form, to a jury, as matter of fact, under proper instructions, as all such questions are which depend upon variation in the facts and circumstances, until the law, shall be able to fix some definite criterion, which is not probable in this case, although it is well known that such is now the case upon many subjects which were formerly matters of fact for the jury; for instance, the time of giving notice of the dishonor of a bill or note. A case like *United States* v. *Hooe*, is clearly a partial assignment; and one which includes all one's attachable property, and which is intended to close up one's business, and does so, at once, is clearly a general

XXVI       31

assignment. The difficulty is in the intermediate cases. The cases in the United States courts, many of which are referred to in a note to *United States* v. *Fisher*, 1 Peter's Cond. 430, seem to require that an assignment to come within the act of Congress, must include all the debtor's property; and many of the cases in the Circuit court upon this subject, as *United States* v. *Clark*, 1 Paine 629, seem to regard this as the proper definition of a general assignment; and in one sense it is undoubtedly. A general assignment must include, *substantially, all* a man's property; and a partial assignment must omit some *substantial portion* of the property, and cannot be made to rest upon a mere *colorable omission.*

But, to begin with the subject at the beginning, an assignment which, like the present, on its face, purports to be but a partial assignment, is so to be regarded and treated until the contrary be shown. ( *United States* v. *Howland*, 4 Wheaton 108 ; *U. S.* v. *Longton*, 5 Mason 280 ; *Wilkes* v. *Ferris*, 5 Johns. 335 ; *Rundlett* v. *Dole*, 10 New Hamp. 458, 471 ; *Driscoll* v. *Fish*, 21 Pick. 503.) We do not perceive why this rule is not as applicable to the case before us as to assignments under which the United States attempt to assert their priority, under the acts of Congress of 1797–1799. In both cases it may be said the assignors have a motive not to bring the assignment within the statute, and so will be likely to adopt terms of exclusion ; but that is equally true of many other legal requisites, and of almost all prohibitions in regard to contracts ; and still it has always been held as one cardinal rule of construing contracts, even in regard to statutory requisites—positive or negative—so to expound them that they may be upheld, when that can fairly be done.

Applying this rule to the present case, it resolves itself into a question of an attempt to evade the statute ; for the deed, in terms, recites that this is the purpose of its execution, to devote a portion of the debtor's property to the payment and security of " certain specified debts, and the other debts due from him." If this purpose is *bona fide* carried out in the instrument, then the transaction is what it purports to be, a *partial* assignment of the debtor's property, and not a *general* assignment. As no question of this kind was raised in the court below, it could not have been expected the court would charge with reference to it. Such a course, where

no testimony was offered upon the point, would itself have been error. We might, therefore, content ourselves, and affirm the judgment at this point, since the charge, upon the face of the instrument—there being no attempt to impeach its *bona fide* character—was undoubtedly correct.

But it is no doubt competent for such creditors as choose not to come in under the assignment, always to raise the question whether an assignment claiming to be *partial* is not, in fact, *general,* and to give evidence to show such fact, which, under proper instructions, is to be submitted to the jury; and it may be proper to state here, the elements which must determine such issue.

I. It would not be enough to impeach the assignment as a partial one, that it was made such to evade the statute against general assignments, and that but for that statute, none of the property would have probably been omitted; for it was to have been expected, and was commendable in the parties, to conform to the existing law, although aiming to go to the utmost verge of its indulgence, and evidently disposed to go further, in that direction, but for the law.

2. The question is, did the debtor, in fact, make a *general* assignment, although denominating it a *partial* one? For this purpose it is not needful the assignment should include absolutely *all* the debtor's property, but it should be *substantially* all; so that, for the purpose of continuing his business, or paying his debts, or future subsistance, he might just about as well have included the part omitted.

3. The question will have to be determined by the jury, then, in the exercise of a wise discretion with reference to the relative amount of the property omitted, to the debtor's whole property, and the character of that omitted.

4. If the property omitted was insignificant in amount, with reference to the whole, or if it was mainly beyond the reach of process, or exempt from process, or of such a character as not readily to be made available, either to the creditors or to the debtor, and the great mass of the debtor's available property which constituted the basis of his business operations, and which could alone form any reliance to himself for support, or to his creditors for payment, was included in the deed, the deed should undoubtedly be regarded as a general assignment, within the mischief intended to

be remedied by the statute. Short of this, the assignment, being in terms partial, should not be regarded as made in bad faith toward the statute. No question of this kind was raised, or probably could have been, with much propriety, when so large a sum as fifteen or twenty thousand dollars was omitted.

The judgment is affirmed.

NOTE.—In the course of the examination of that part of the assignment which is made directly to certain creditors, for their own security, we entertained no doubt that such assignments are not within the mischief of the statute; certainly not, unless the bulk of the creditors are included, and *substantially* all the property; and we should have been prepared to uphold that part of the assignment, upon that ground alone, had not the other portion of the assignment converted the whole into a trust assignment, for the benefit of other creditors, and ultimately of all the creditors.

