BARD P. PAGE v. LEWIS M. OLCOTT, JOHN HENRY DAVIS AND JAMES BENNETT.

[IN CHANCERY.]

*Liability of assignee or other trustee for sales by barter, exchange, or on credit, or on neglect to keep accounts. Grounds of liability to be charged in bill. Parties to suit in chancery. Want of proper parties to be objected to in answer.*

An assignee or other trustee who sells trust property by way of barter, or exchange, or on credit, should be charged with the cash value of the property at the time of the sale, and the interest thereon from that time;—unless in the case of a barter or exchange those in interest elect to affirm it.

If he neglects to keep full and fair accounts of such sales, and their amount cannot be ascertained by him, he should be charged with the value of the property and interest.

Upon a bill in chancery against an assignee or other trustee, for a breach of his trust, he should be held to account only for such neglects or breaches of duty as are charged in the bill.

The preferred creditors in an assignment need not be made parties to a bill for an account, brought against the assignee, by a general creditor who claims only the benefit of such a balance as shall remain after paying the preferred creditors.

If the want of proper parties to a bill in chancery is not insisted on in the answer, it cannot, as a general rule, be insisted on at the hearing.

APPEAL from the court of chancery. The bill charged that the defendant Bennett, having been in trade at Rockingham, and being

in failing circumstances, made an assignment to the defendants Olcott and Davis, February 28, 1842, of all his property, consisting of a lot of land with a house, store and barn upon it, a store of goods and other articles of personal property, and all his choses in action, to pay, *firstly*, Francis Bennett, Lewis M. Olcott, Aramitta Wright, Elvira Henry, Thomas Dixon, Elias Olcott, Jonas Proctor, and the debts for which Lewis M. Olcott was holden; *secondly*, the drafts accepted by Leach & Elliott on Bennett's account, and debts due Wentworth, Bingham & Co.; *thirdly*, all other creditors ratably : and averred that the orator was the owner of claims, existing at the time of the assignment, to the amount of $768.03; that they, Olcott and Davis, accepted the trust and took possession of all of Bennett's estate, goods and chattels, and choses in action, to the amount of $20,000 ;—that, in violation of their duties, they sold a large amount of the assets to irresponsible persons on credit, and unreasonably and unjustifiably neglected the collection thereof, to the amount of $4,000, whereby the same was wasted and lost;— that they had converted into money a great portion of the property and collected large sums of money from the choses in action, more than sufficient to pay all Bennett's debts, including the orators, and the expenses of the assignment: and prayed that an account might be taken of what was due to the orator, and of what the defendants Olcott and Davis had received, or might have received, but for their carelessness and negligence, and of all the funds remaining ; and that they be decreed, after paying the preferred creditors, to pay to the orator, and such other creditors as shall come in, &c., a *pro rata* dividend, and for further relief.

The defendant Olcott answered, admitting the assignment and that he and Davis accepted the trust, took possession of the property and made an inventory; and stated that at the time of the assignment he did not know much about Bennett's property or liabilities, but soon afterwards he ascertained that the property would not more than pay the preferred creditors;—that he sold the real estate to Calvin Simonds, for $1,100 ;—that on the 27th of August, 1843, there remained in his and Davis' hands personal property and choses in action uncollected to the nominal amount of $3,505.16, much of which was poor and worthless ;—that after the making of the assignment and before August 27, 1843, he had collected of the

choses in action $3,173.16, and that during said period he had paid to preferred creditors $3,156.05,—and denied that any part of the funds, to his knowledge or belief, had gone to the use of Bennett; and further stated that, August 27, 1843, ascertaining that Calvin Simonds had purchased in the outstanding preferred claims, and that the assigned property, then in the assignees' hands, was not more than sufficient, and, the defendant believed, not quite sufficient to pay the preferred claims, he, at the request of Simonds and Bennett, delivered the property then remaining on hand to Simonds, to be applied, as far as it would go, to pay the preferred debts, and that he gave his own note to Dixon for his preferred claim of $1,070, which, at the time of said transfer, Simonds undertook to pay, but did not, and the defendant had been compelled to pay it; that he had spent much time and labor and had been at great expense in executing the trust; for which he had received no remuneration.

Exceptions were taken to the answer: and thereafter an additional answer was filed, stating that it was impossible to state accurately the amount of goods sold, because the store was kept open and the goods sold for cash, barter, or credit, as before the assignment; no account was kept of the cash sales, and the proceeds were put in with the other cash, and used only for the purposes of the assignment; that no memorandum was made of exchanges, and that goods sold on credit were usually charged on blotters, but sometimes notes and receipts were taken; that the blotters could not all be found, and, if found, would not show the true account of the sales of the goods *assigned*, as they included charges for goods received in exchange and upon account; and giving a list of all the amounts due for goods sold August 27, 1843, which were transferred on that day to Simonds, of which $120 was for goods sold Wm. B. Perry, who was then good, but failed soon after, and the debt became worthless; $100 for the note of R. S. Bennett, considered good when taken, but which turned out to be worthless; $374.13 for accounts payable in lumber, mostly in Peru, worth much less than their nominal amount, and stating that many other of the demands in the list became and were of no value; and insisted that he acted in good faith, and with due care and prudence, and with due regard to the interests of all persons concerned; de-

nied that he sold any part of the assets to any person who was irresponsible at the time of the sale or that he had any reason to believe would become so before the expiration of a reasonable credit, or that he unreasonably or unjustifiably neglected to make collections, &c.

The chancellor dismissed the bill and the orator appealed.

*Keyes & Bradley* for the orator.

*W. C. Bradley* aud *D. & G. B. Kellogg* for the defendants.

The opinion of the court was delivered, at the circuit session in October, by

BENNETT, J.   We think the decree of the chancellor, dismissing the bill, should be reversed, and the cause be remanded to the chancellor with instructions to send it to a master, in order that he may make a full and complete statement of the accounts of the trustee Olcott, under the assignment, detailing, with all convenient certainty, his proceedings under the trust, and the report to be made to the chancellor for his action thereon, as to him shall seem meet and proper; the death of Davis, his co-assignee, having now been suggested on the record.   This court, however, will indicate to the chancellor certain principles which should be adopted by the master in taking the accounts, leaving other principles to be settled by the chancellor, if found necessary.

So far as the trustee sold the property of James Bennett upon credit, he should be charged with the cash value of the property at the time of the sale, and interest on the same from the time of the sale; and cases no doubt might arise, upon a proper bill, in which the trustee should be made chargeable for a depreciation in the value of the property before the sale, if he has been guilty of culpable negligence in not effecting an earlier sale.   In New York, it is fully settled that an express power given to the assignee to sell on credit, renders the assignment void, as against creditors, upon the ground that it may delay them.   See *Barney* v. *Griffin*, 2 Comstock 365; *Nicholson* v. *Leavitt*, 2 Selden 510; *Burdick* v. *Post*, 12 Barb. 168, and affirmed in the court of appeals; see 2 Selden 522; and the same principle was again fully recognized by the court of appeals, in *Kellogg* v. *Slauson*, 1 Kernan 304.

We are well satisfied with the views of the New York courts upon this point, and, for the reasons upon which those cases are based, the cases themselves may be referred to. Though this question has been somewhat discussed of late, in our courts, yet I am not aware that we have had any express adjudication upon it. The case of *Mussey et al.* v. *Noyes et al.*, 26 Vt. 462, was decided upon a construction of the assignment, the court holding that no *express* power of sale on credit was given in the instrument, and none should be *intended* in order to vitiate the assignment. It cannot be claimed that the present assignment gave a power to sell on credit, and the sale on credit was a violation of the trust. It will not be claimed that the trustee should be allowed to sell on credit, and yet hold the assignment *void* if it provided for such a sale in *express terms*. Trustees, acting in good faith, and with due diligence, should be entitled to an indulgent consideration of the court, yet if they betray their trust, or have been guilty of culpable negligence, they should be dealt with according to the rules of strict, if not rigorous justice. It is necessary, in such cases, that rules of somewhat of a stringent character should be established to prevent speculation in trust funds, and to induce fidelity of conduct.

It would seem to follow that the trustee should not be allowed to deal with the trust property by way of barter or exchange. It is his duty to convert the property of the insolvent into money with all reasonable despatch, and pay over the avails to the creditors, according to the provisions of the assignment. Cases may be supposed, where it might be for the interest of all concerned to allow the trustee to barter away the trust property in exchange for other property; yet this is aside of the trust, and would open a door for speculation and gross fraud, and we think the rule in such cases should be to charge the trustee, at least, with the value of the property, at the time of the exchange, and the interest, unless those in interest shall elect to affirm the exchange. It may, however, be questionable whether there is enough alleged in the bill to allow such a charge.

It might perhaps be claimed that the assignment of the property to Simonds, under the contract set up in Olcott's answer, was a breach of the trust; yet this is not complained of in the bill, and a trustee is not to be held to account for any neglect or breach of

duty not charged in the bill. It would seem as if the only negligence or breach of duty complained of in the bill was the selling on credit a part of the property, and negligence in not collecting such debts, and in not accounting for such moneys as he had received; but it is not necessary now to settle the construction to be given the bill.

It was the duty of the trustee to keep a full and fair account of the sales of the trust property, and, if he neglects to do this, and the amount of sales cannot be ascertained by him, he should be charged with the value of the property sold by him, and the interest on it.

The objection urged, in the argument, that Leach & Elliott were not made parties to this bill, is without weight.

The bill goes upon the ground that all the preferred creditors are first to be paid, and, of course, their interest is not antagonistic with that of the orator. If the debt of Leach & Elliott has not been paid, the trustee would have a right to detain funds in his hands for that debt, and no questions are raised as to its amount. Besides, the want of parties was not insisted upon in the answer, and the general rule is, if it is not insisted upon in the answer, it cannot be at the hearing.

Decree of chancellor reversed and case remanded, &c.