Pece, J.
delivered the opinion of the Court. The errors assigned will be noticed in their order. And first, was it a prerequisite to taking the judgment that ten days’ notice should have been given ?
These proceedings were had, by virtue of the Act of 1820, ch. 7, § 10, incorporating the Bank of the State of Tennessee. The section referred to provides that “ said bank shall discount bills of exchange and notes, with two or more good securities, who shall be jointly and severally bound; and shall have power to make loans to citizens of this State, in the natuie of discounts, on real or personal property, secured by mortgage, and power of attorney to confess judgment, on default of payment.- Provided, that loans shall never be for a longer term than one year, nor for more than at the rate of six per cent interest; and that no loan shall be renewed, unless the interest on the reloan shall be paid in advance; and. provided that the directors shall not call in more than one tenth, at the time the 'same shall' become due, without giving sixty days’ notice. And all persons failing to make payment of the principal and interest, as aforesaid, shall be deprived of future credit in said bank, and judgment shall immediately be entered up on the power of attorney given, as by this Act required; and execution shall issue for the whole amount.”
The 21st and 22d sections of the Act provides that “the president and *521 directors, or agents in the several counties, may loan, upon personal security, renewable every three [181] months, and upon real security for six months, or for a longer period, not exceeding twelve months; and that no loan shall be made for a larger sum than $ 500, or upon any other condition than those expressed.”
By an attentive examination of these provisions, it will be seen that they .are all directory to the president and directors of the bank. They, to be sure, are, to a certain extent, limited in the exercise of the franchise committed to their care. The Act has employed the most special words of caution in relation to the funds which are to be loaned.
The law presumes all persons, who get accommodations in said bank, to be cognizant of all the provisions of its charter; and a strict enforcement of all obligations assumed to the bank, either by coercing payment or otherwise, as exigencies may require, is a matter of right and necessity; of all of which the directory,, from the nature of the institution, must be the judges.
In the case before the Court the money was due; it is not pretended that there was even an implied obligation for a renewal of the loan ; no application was made to renew the note, and consequently no tender of the interest upon the whole sum, or any portion of the principal, as may have been demanded, or the charter required. Supposing it, then, to be the right of the bank to proceed against the plaintiffs in error, we perceive no error in proceeding to judgment without the notice of ten days, insisted upon in argument. It is certainly not expressed as necessary, and is believed not to have been in the contemplation of the Legislature. Indeed such a provision would in many instances have precluded a judgment for three months; as, when a note fell due just immediately preceding the sitting of a County Court; in many of those cases notice could not be given, and the subject acted upon at the approaching term, for the want of time between the service of the notice and the adjournment of the Court.
The Act of 1801,- ch.. 19, has no application to a case like the present; each act has subject-matter upon which to operate wholly dissimilar in its character. To perceive this, [182] it is only necessary to compare the different acts with each other.
Secondly. “ Sixty days’ notice was not given that the whole sum would be demanded when the note fell due.”
A part of what has been said in answer to the first objection applies equally to this. The time of payment had passed; was there any agreement to renew ? If there were, did the plaintiffs in error offer to renew, and tender the interest in advance ? In short, was this a case of lending where the rule, as to sixty days’ notice, could apply ? All we can know of the contract is from the face of the note; and from that no such implication arises.
*522 Thirdly. “That there was no proof of the authority to confess a judgment,” &c.
The record is explicit on this point; its language is, “ it appearing to the satisfaction of the Court that said Joseph Philips has authority to confess a judgment, &c. by virtue of a power of attorney from them to the said Joseph, which is now to the Court shown,” &c. This is stating upon the record the legal inference from the evidence, and is expressed in accordance with the most approved forms. All that was proved need not be put upon the record; but in all cases the conclusion from the evidence, as found by the triers, is sufficient. From the language used in this record, we are bound to infer that proof was made of the execution of the power of attorney; supposing that proof to have been made, then, in the person of the attorney in fact, the plaintiffs in error were before the Court confessing judgment. Qui facit per alium, facit per se.
As to this summary mode of proceeding, whether politic or not, is not for us to determine ; so far as it does not conflict with those constitutional privileges which belong to the citizen, we are as much bound to carry into effect the will of the Legislature in reference to them as any other subject.
The case of The Bank of Columbia v. Oakley, 4 Wheaton, 240, goes vastly further than this case, and in principle settles this question. By the charter of that bank, for the recovery of notes indorsed, being made negotiable there; on [183] default of payment, the clerk of the General Court, on application of. the president of said bank, was directed to issue a capias ad satisfaciendum, fieri facias or attachment, by way of execution.
When that case went before the Supreme Court of the United States, we may well suppose that much was urged against the constitutionality of a proceeding so summary as not to require even the judgment of a court. Yet, on a patient and full investigation before that Court, that provision of the charter was held to be constitutional. The case before the Court is very materially different; the power to confess judgment was executed at the time of making the contract; it was a part of the contract; the charter of the bank, when pursued, fixes the law of the contract, which being violated by the default of the plaintiffs in error, and pursued, with certainty to a common intent, by those on whom the duty devolved, to a judgment.
We think it should be affirmed.