VETAL GUERIN, Respondent, *vs.* HENRY W. HUNT, *et al.*, Appellants.

### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

An attachment allowed by the Clerk of the District Court is void, and affords no protection to the officer executing it.

An assignment for the benefit of creditors is not void merely because the value of the property assigned, as shewn by the schedule or otherwise, exceeds the amount of the debts. The excess must be so great as to induce belief that the assignment is for the benefit of the assignor, and to protect him from the sacrifices attending a forced sale, rather than for the benefit of creditors, before it will be declared void for that reason alone,

The prices or values fixed in the schedule are not conclusive upon the assignee.

It is not error for the Court to instruct the jury that an assignment regular upon its face and in due form, is not presumed to be fraudulent, and that the burthen of proof is on those who attack it. Nor that upon the question of fraud the intent is the only subject of inquiry, and acts wholly independent of the tact of assignment cannot be considered by the jury. Nor that where the intention of the assignor is in good faith to devote the property assigned to the payment of debts, and not to defraud creditors, the necessary delay attending the execution of the trust will not vitiate the assignment.

This action was brought about April 10th, 1857, to recover the value of merchandize alleged to belong to the Plaintiff Guerin, who became possessed thereof as assignee of Bartlett & Cazeau, a mercantile firm of St. Paul, by an assignment bearing date February 23d, 1857. The taking was about the 12th day of March, 1857.

The answer denies the wrong, &c., and justifies under an attachment issued on the 10th day of March, 1857, as auxiliary to an action brought to recover a debt due from Bartlett & Son and Bartlett & Cazeau (assignors as aforesaid) to the Defendants, Hunt, Wiggins & Co. The writ was levied 11th March, 1857, upon the goods alleged to be with and belonging to the firm of Bartlett & Cazeau.

The answer also states that on the 17th of June, 1857, a judgment was rendered in favor of the Defendants, H. W. & Co, and against Bartlett & Cazeau, that execution was issued and certain of the goods sold thereon.

The reply denies all the new matter of the answer.

The Plaintiff introduced and read without objection an assignment from the firm of Bartlett & Cazeau, of copartnership property, to pay, first, certain preferred creditors of the firm, secondly, the other creditors, and lastly, the individual creditors of the several copartners.

The nominal amount of assets, as per price carried out in the deed, was—

| | | |
|---|---|---:|
| Goods | | $27,581 90 |
| Debts to firm | | 3,992 40 |
| Other personal property | | 125 00 |
| Store at Faribault | | 4,000 00 |
| | | $35,699 30 |

The schedule of copartnership debts aggregated, amounted to - - - $24,500 91

There was no schedule of individual debts.

After the Plaintiff had introduced certain evidence and rested, the counsel for the Defendants next moved the Court to dismiss the action, which motion was denied.

Defendants then offered, under objection from Plaintiff's counsel, judgment roll in favor of Defendants, Hunt, Wiggins & Co., against Bartlett & Cazeau and Bartlett & Son, rendered and docketed January 17th, 1857, for $2,665.73.

Defendant also offered an attachment, dated March 10th, 1857, appearing to be allowed by the clerk of the district court of Ramsey county, with the return of seizure. Also received, under objection.

Defendants next offered and introduced, under objection, the execution upon the judgment, dated June, 1857. Return of sheriff to effect that execution was satisfied by sale of goods attached. Also, certain evidence tending to show the fraudulent character of the assignment.

The following are the instructions asked by counsel for the respective parties, as contained in the case settled :

1st. If the jury find that Bartlett & Cazeau, the assignors, at the time of the assignment, had more than sufficient to pay their debts and liabilities, the assignment was void as to creditors, and they must return a verdict for the Defendants.

The first request of Defendants was refused, and the Court

charged in connection that the request was too general and calculated to mislead ; if it did not necessarily follow that an assignment was void, that it shall turn out that there were more assets than debts, as such excess might be merely nominal or might have resulted from circumstances not anticipated at the making of the assignment, though the parties at the execution thereof might in good faith have been considered insolvent.  If, however, it should appear from the face of the assignment that there were ample assets to liquidate the debts, then it is clear there would be no occasion for an assignment, and the same would be void in law.   Or if the same should appear from evidence outside the assignment, the jury would be bound to find it void.   This question would depend upon the amount of excess, if any, taken in connection with the nature and convertibility of the assets.

2nd. That in determining the value of the property of the assignors, at the time of the assignment, the estimate in the schedule must be regarded at the cash value, in the absence of other testimony as to the value.

The second request of the Defendants was refused by the Court, but the Court charged that the estimates in the schedules were not conclusive as to the assets, unless there was in connection some allegation or admission by the party to that effect.   If such estimates were admitted by the party to be correct in the pleadings or on the trial, he would of course be bound by them.

3rd. If the assignors at the time of the assignment, supposed they had more than sufficient property to pay all their debts and liabilities, and their object in making the assignment was to prevent their property from being seized by their creditors, the assignment was void and the verdict must be for the Defendants.

The third request of the Defendants charged ; but the jury were also referred to what had already been said in reference to the assets and their amount and availability under the other points, the real question being as to the intent of the assignors.

4th. In determining as to the validity of the assignment the jury must take into consideration the business character and

qualifications of the assignee to discharge the trust; and if an illiterate man is selected, who cannot transact the business himself, it is a badge of fraud and evidence from which the jury may find that the assignment was made with intent to hinder, delay and defraud creditors, especially so if the property assigned is large in amount, as in the present case.

5th. If at the time of the assignment the assignors had more than sufficient property to pay their liability, and their. object was to protect their property from sacrifice and thus realize more out of it, the assignment was void as to creditors.

And the Court so charged, and added that the object of the assignment should be the benefit of the creditors and not that of the assignors, and that an assignment made to embarrass creditors, in order to gain time, is void.

6th. If the jury find that the assignors, or one of them, removed goods from the store without paying for them, after the assignment, it is a circumstance from which, with other facts, the jury may find a fraudulent intent on the part of the assignors in making the assignment.

7th. If the jury find that the claim of the preferred creditors has been preferred in said assignment for the full amount thereof, when it had actually been paid in part, it is a strong badge of fraud, and evidence from which the jury may find the assignment was made to defraud creditors.

Counsel for Plaintiff asks Court to charge jury—

1. The deed of assignment being in due form and regular on its face, fraud will not be presumed with reference to it, but the burden of proof is on the Defendants to show it fraudulent. The presumption is that the deed was made in good faith and that it is untainted with fraud.

2. The assignment to the Plaintiff was the joint act of Louis Bartlett, jr., and Firman Cazeau, acting as copartners under their firm name of Bartlett & Cazeau, and purported to be a general assignment of the partnership property of that firm, and of that partnership property only.

3. The deed of assignment does not on its face purport to convey any of the individual property of either Louis Bartlett, jr., or Firman Cazeau, but leaves the same in all respects so far as it (the assignment) is concerned, subject to every

debt and liability of the respective owners of such individual property.

4. That incompetency in an assignee, which in law would amount to a " badge of fraud," and which would tend to invalidate an assignment, is not merely a want of ability to read or write, or of the accomplishments taught in schools, but it also implies that the assignee is wanting in the capacity to manage and conduct the ordinary business of the assignment, and that the assignment must suffer neglect or be managed by the assignee as the instrument or tool of the assignors, for their benefit, and in fraud of the rights of creditors.

5. The business competency of the assignee is only material, so far as it tends to establish an intention on the part of the assignors to retain control over the property by reason of want of competency, and if the jury fail to find that such was the design of the assignors in the selection of Guerin, it is immaterial what were his business qualifications. In the absence of such fraudulent intention on the part of the assignors the only effect of such incompetency would be to render the assignee liable to removal on the proper application of a creditor.

Which was charged, and also " the assignor having the choice of his assignee, without consultation with or consent of his creditors, must take care that he appoints a person competent to protect the rights of all parties interested under the assignment. If it appears that the selection of an incompetent assignee was made in order to allow the assignor to control the administration of the estate, then the assignment will be declared void because such an intent on the part of the assignor would be a fraud upon his creditors. If it should appear that the assignee was incompetent in fact from any cause, but that his selection was not made from any improper motive on the part of the assignor, then the assignee would be subject to removal, and the assignment would be sustained."

6. The only subject of inquiry for the jury (so far as the question of fraud is concerned) is the intent with which the assignment was made, and acts wholly independent of the fact of assignment cannot be considered.

7. An assignment is not fraudulent because it may or even

must operate to obstruct or delay creditors; for every assignment, with however good faith, must so operate. The jury must find that the intention of the act was to defraud creditors, and not to devote the property assigned to the payment of debts.

Which was charged as requested. The Court adding, if there was an intention to delay creditors, it would render the instrument void, but if there was no such intention, the necessary delay attending the execution of the trust was not material.

8. The employment by the assignee of one of the assignors in closing up the business of the assignment is not inconsistent with the objects of the trust, and is not necessarily indicative of a fraudulent intent in making the assignment.

Which was charged, the Court adding: The jury will judge from the facts in the case whether the object was for the assignee still to retain the control over the goods, in connection with the question as to the original intent in making the assignment.

9. The management of the trust by the assignee does not of itself affect the assignment if it was valid at the inception.

Which was charged, the Court adding: The acts and conduct of the parties subsequent to the assignment are only material as they serve to throw light upon the question of the original intent in making the assignment.

10. The sufficiency or insufficiency of the assigned property must be considered in connection with its character and convertibility, and it is only when disproportion between the assets and liabilities is so great as to lead to the conclusion that the instrument was executed for the benefit of the assignors, that is with a view to their resulting interest in the surplus, and to the prejudice of creditors, that it will be regarded as avoiding the deed. *Burrill*, 226 *and* 201 *and notes.*

And the Court so charged in connection with the point of the Defendants upon the same subject.

11. The prices fixed opposite to the items of property in the schedule annexed to the assignment, are not conclusive evidence of the value of the property. *Id.*, 257.

And the Court so charged in connection with the points of the Defendants upon the same subject.

12. If the property assigned was in fact sufficient, and the assignors believed it so to be, if managed with prudence, to satisfy all their debts, but when exposed to coercive process it was insufficient to do so, and was so believed by them, and the assignment was made with an intention fairly to devote the property assigned to the payment of all debts, and to prevent its being sacrificed to pay the debts of one or a few creditors, to the harm and prejudice of the remainder, then it was made in that respect without taint and with an honest intent.

And the Court so charged, in connection with the points of the Defendants upon the same subject.

Every case would have to be determined upon the peculiar nature of the facts in the case, having reference to the amount and nature of the assets as compared with the amount of the debts, and their convertibility within the time of the maturity of the debts.    That a man is insolvent who is unable to pay his debts as they fall due, even if he has property which, by judicious management, may, in time, be converted into sufficient cash to pay his debts in full.

Points and Authorities of Appellant.

I.—The Court below erred in not granting the nonsuit, or motion for a dismissal.  *Case, fol.* 93.

It appearing by the schedules attached to the assignment in question, and placed in evidence by Plaintiff, and the other evidence of Plaintiff uncontradicted and unexplained, that the assets were far greater in value than the amount of indebtedness of the assignors, to wit :|

| | |
|---|---:|
| Merchandize readily convertible, - - - | $27,581 90 |
| Accounts, - - - - - - - | 3,992 40 |
| Other personal property, - - - - - | 125 00 |
| Real estate, - - - - - - - | 4,000 00 |
| | $35,699 30 |
| Entire indebtedness, - - - - - | 23,400 91 |
| | $12,298 39 |

*Case, fols.* 49, 52.

Such an assignment is void against the Defendants, who were judgment creditors. 4 *Minn.*, 204; 6 *Ib.* 305. It appearing also by the Plaintiff's evidence that the assignment was made to protect threatened attachments. *Case, fol.* 70; 6 *Minn.*, 305.

II.—The Court below erred in not instructing the jury, as requested by Defendants in the first and second requests. *Case, fol.* 123-5. *See authorities before cited.*

The instruction of the Court, in this particular, was calculated to mislead the jury.

III—The Court below erred in affirming Plaintiff's first request to charge.

The assignment, with the schedule attached, was presumptively fraudulent ; the Court charged substantially the reverse. *Case,* 132.

IV.—The Court below erred in affirming the Plaintiffs' 6th, 7th, 10th, 11th, 12th requests. *Case,* 137, 138, 140, 141, 142, the same being inapplicable to the case, erroneous, and calculated to mislead.

V.—The verdict was against evidence.

The verdict could not be sustained by any evidence in the case in relation to the question of fraud, arising from the surplus of assets over debts, for all the evidence in the case sustained the showing of the schedules in this respect.

And see points of motion for new trial. *Case, fol.* 146.

Points and Authorities for Respondent.

I.—The Appellate Court will not send a case back for retrial, if it is apparent from the record that the errors complained of being corrected, a different result could not be attained.

1st. The Court will discover, by an inspection of the return in the case (what the fact was,) that the attachment was allowed, by the clerk of the Court issuing it, acting through his deputy. This Court has decided that *Sec.* 142, *p.* 550 *of Compiled Statutes,* so far as it authorizes clerks of the District Court to allow warrants of attachment, is in conflict with

section one, article six of the State Constitution.   6 *Minn.,* *p.* 183.

This attachment was allowed in March, 1857, before the State Constitution was operative.   The Constitution of the Territory was the Organic Act.   Sec. 9 of the Organic Act is precisely in the same words and of the same effect as Sec. 1, Art. 6 of the State Constitution.

Every error suggested upon this record appertains to the question of fraud.   The goods were taken under the attachment March 11th, 1857; the action was commenced Apr'l 10th, 1857.   The justification is under the attachment.   It is true the answer irrelevantly avers a judgment rendered June 17th, 1857.   This matter ·is, however, entirely independent of the wrong complained of and would have been stricken out on motion.

It may be said that no point was made below upon the warrant of attachment, and therefore this Court will not consider it.   There would be force in this suggestion if the Defendants could have remedied the matter below, had the point been urged.

The Court sees that it is irremediable.   The Court also sees that to send the case back would be trifling with judicial proceedings, because the result must be the same, no fault being found with the damages.   If the Defendants had no attachment, they were strangers and naked wrongdoers, and, so far as they are concerned, it is wholly immaterial whether the assignment was fraudulent or not.

II.—The Court below committed no error in disallowing the motion for a dismissal of the action, nor in the refusal and charge connected with Defendants' first and second request, nor in the charge given under the tenth and eleventh requests.

We have grouped the motion to dismiss, and the charges and refusals above referred to together, because they are cognate in the case, and raise substantially the same questions.

The proof upon which these propositions are based is substantially this : The schedule of assets attached to the assignment shows items, viz., Drygoods, groceries, boots and shoes, &c., with prices set opposite, aggregated at $27,581.90 ; debts

due the assignors of nominal amount of $3,992.40 ; other per. sonal property, named at $125 ; store in Faribault set down at $4,000.   The assignment also provides for individual debts of which no schedule is given.   The interest upon the debts owing from the firm is not computed, but the amount is given at $24,800.91.   Both Mr. Desmeules and Mr. Guerin state in substance that after looking over the schedules it was remarked by Demeules or Guerin that there was enough to pay the debts, and the assignors, or one of them, replied that there was unless one or a few creditors absorbed the whole—that they wanted to pay all their debts.   This is the substance deducible from the testimony, and is all that can be considered in this connection.

I may remark that this case, almost *totidem verbis*, has once been in this Court, and substantially the same point has been urged here before.   *Vide Guerin vs. Hunt et als.*, *6th Minn., pp.* 393-4.   I refer to the argument of counsel, Point 10th : " The property of the assignors, at the time of making the assignment, was much more than sufficient to pay all their debts and liabilities," &c., then giving abstracts of the same schedule, with the same footings we find here.   The whole proposition is supported by the case of *Burt vs. McKin_stry & Seeley, 4th Minn., pp.* 310 *to* 317, and other authorities mainly there referred to, in the opinion of this Court, in *4th Minn., pp.* 310, *&c.*   It is hardly decorous to argue this point again, because it is not to be supposed that this Court would so far stultify itself as to send back a case for errors when its attention was called to admitted facts, which would dispose of it irremediably and for ever.

The whole stress of the Defendants' case rests upon the decision of this Court in *Burt vs. McKinstry & Seeley, 4th Minn.,* 204, *and Gere vs. Murray, 6th Minn.,* 305.   These cases contain no new doctrine, but simply a collaboration of the principles which have always been known to and adopted by the Court.   We have already seen that the case of *McKinstry et al. ads. Burt,* has impliedly been ignored of application to this.   The case of *Gere vs. Murray* was argued and decided at the same term with that of *Guerin vs. Hunt,* and is reported first in the same *(6th) vol. of Minn. Reps.*

The case of *Picklocke vs. Kysler*, 4 *East.*, 1, 13, 15, referred to in *Burrill on Assignments*, *pp.* 375-77, is leading, and in point here.

III.—The Court below committed no error in charging as it did in connection with Plaintiff's 1st, 6th, 7th and 12th Requests. *Burrill on Assignments, p.* 397.

Horn, Lund & Galusha, Counsel for Appellants.

J. B. Brisbin, Counsel for Respondents.

*By the Court.*—Emmett, C. J.—The first point raised in the Respondent's brief is well taken, to wit, that the attachment under which the Defendants justify the taking complained of is void, because allowed by the clerk of the District Court. This Court has decided, in *Morrison et al. vs. Lovejoy et al.,* *6th Minn.*, 183, that the allowing of a writ of attachment to issue is a judicial act, the power to do which cannot, under our constitution, be conferred upon the clerk. This would make the Defendants trespassers as to the taking of the property from the Plaintiff's possession, even although it should be found that the assignment, under which the Plaintiff claims was fraudulent, as against the creditors of the assignors. But still this point does not necessarily dispose of the entire defence.

The action, it will be observed, is for taking and converting to their own use the property of the Plaintiff; but no special damage for the taking is alleged or claimed, general damages only being demanded, and that too in a sum answering exactly to the alleged value of the property taken. The defence is not confined to the attachment, but as though aware of the defects above noticed, and with a view doubtless to the contingency of the writ being held to be void, it is alleged that the Defendants recovered a judgment against the assignors in the action in which said attachment was issued, and that execution was duly issued thereon and placed in the hands of the Sheriff—that prior to the recovery of said judgment, but while the property remained in the possession of the Sheriff under said attachment, sundry writs of execution, issued upon

other judgments recovered by other persons against the as signors of the Plaintiff, were placed in his hands for collection, under which the property attached was levied upon by said Sheriff and sold, subject, however, to the lien of the Defendants' attachment aforesaid, and that the Defendants' judgment was paid out of the proceeds of such sales.

It will thus be seen that notwithstanding the original taking was unlawful, yet if the assignment under which the Plaintiff claims title was, in fact, fraudulent, and the property therefore still subject to the claims of the creditors of the assignors, it might with reason be claimed by the Defendants, that in no event could they be liable for the value of the property, because that had, subsequently, been duly subjected to, and exhausted by the lawful claims of creditors; but that they were liable only for such damages as the Plaintiff sustained by reason of the taking and detaining of the property, until it was so seized by the Sheriff, under the executions before mentioned. In this view of the case, therefore, it becomes important to ascertain what was really decided by the general verdict for the Plaintiff. And in this we would have been materially aided by the amount of the verdict, from which we might have judged whether it was confined to damages for the unlawful taking merely (which should have been the case had the question of fraud been found for the Defendants,) or included also the value of the goods ; but the paper books furnished are silent as to the amount for which the verdict was rendered. It is pretty conclusively shown, however, by the character of the testimony introduced, the nature of the instructions to the jury, asked by the parties respectively, and the charge of the Court thereon, and upon the whole case, that the action was tried below solely upon the question of fraud on the part of Bartlett & Cazeau in making the assignment to the Plaintiff for the benefit of creditors- This question, in its various aspects, was fully submitted to the jury, under the charge of the Court, and found for the Plaintiff. And this finding (which in our opinion is amply justified by the evidence,) ought to be conclusive on that issue, unless the charge to the jury, as given, or refused was erroneous and calculated to mislead.

The Defendants insist, on the authority of *Burt vs. Mc-Kinstry & Sealy, 4th Minn.*, 204, that the Court erred in refusing to charge that in the absence of other evidence on the question, the value of the assets, as stated in the schedule accompanying the assignment, was conclusive upon the Plaintiff—that the value of the property assigned, as shown by the schedule, was greater than the amount of the debts, and, therefore, that the assignment, as against creditors, was void upon its face.

The same points were also previously made, upon a motion to dismiss the action, after the evidence of the Plaintiff was closed, and the ruling of the Court, denying the motion, excepted to.

In the case referred to, the value fixed by the schedule was not regarded as conclusive, but only referred to as entitled to great weight in forming a conclusion as to the motives which led to the assignment; because, as was stated, there was no apparent inducement for placing a higher estimate than the assignors supposed to be just, and they could not well have believed themselves insolvent, when by their own estimate the value of their assets was about three times the amount of their debts, as shown by the schedule. It was held, however, that they were bound by the admissions of the pleadings, which showed the cash value of the assets to be three times the amount of the debts. But it was not intimated that an assignment would be void, merely because the assets exceeded in value the amount of the debts. On the contrary, it was expressly stated in that case that it is only when the property assigned is *much more* than sufficient to satisfy all demands, that an assignment can for that reason be regarded as made at the expense of the creditors, and really for the benefit of the assignor; and the argument urged was, that a wrong intent could be inferred in a case where the value of the assets exceeded the debts by three times, as well as where it is. ten times the amount of the debts. A case was also cited in the opinion, with approval, (*Beck vs. Burdet*, 1 *Paige*, 205,) in which an assignment had been upheld, where the excess of the assets was about in the same degree as in this case ; and

great stress was laid upon the further fact, that the answer admitted that the assignors expected, when they made the assignment, there would be a surplus after paying the debts.

The result of the cases on this question may be stated to be this: that where the excess of assets is so unreasonably large as to force the conclusion that the assignment is made in the interest of the assignor, and to protect him from the sacrifice attending a forced sale, rather than for the benefit of creditors, there the assignment will be deemed fraudulent. But it must be apparent to all that the question of reasonableness or unreasonableness of the excess must depend upon a variety of circumstances, amongst which the convertibility of the assets into money is perhaps the most important.

There is another feature of this assignment deserving of consideration and to which reference is made in the brief of the Plaintiff's counsel. The instrument provides that in the event of there being an excess after paying the debts of the copartnership, then it shall be for the benefit of the creditors of the individual partners; and as there is no schedule or other evidence of the amount of debts due the class of creditors thus provided for, how is it known that the value of the assets, even as fixed by the schedule, exceeds the amount of debts?

These several rulings of the Court which we have above been considering, were repeated in nearly the same language when charging the jury upon the several points requested by the Defendants, and were again excepted to by the Defendants. It will not be necessary, however, to refer to them further in this opinion.

It may also be remarked that the questions raised by the exceptions to the instructions given by the Court, in response to the 10th and 11th request of the Plaintiff, are involved in what we have already said.

As to the remaining exceptions or the several instructions given by the Court upon the requests of the Plaintiff, numbered one, six and seven, we are unable to detect any error. The propositions therein involved, to wit: that an assignment in due form, and regular upon its face, will not be presumed to be fraudulent, but the burthen of proof is upon those who

attack it ; that upon the question of fraud the intent is the only subject of inquiry, and acts wholly independent of the fact of assignment, cannot be considered by the jury ; and that where the intention of the assignor is in good faith to devote the property assigned to the payment of debts, and not to defraud creditors, the necessary delay attending the execution of the trust, will not vitiate,—are each, we think, so entirely consonant with both reason and authority, that an extended discussion of either is not deemed necessary. Indeed, if we look at the entire charge of the Court, we can but regard it as highly favorable to the Defendants.

The judgment below is affirmed.