# WHEELING.

## KYLE, SHERIFF, *v.* HARVEYS.

Submitted January 27, 1885.—Decided April 18, 1885.

1. A merchant being insolvent assigns his whole stock of goods for the benefit of his creditors, two of them being preferred, and by

the assignment authorized the assignee "to sell said goods at *private* sale as soon as possible," and after paying the expenses of sale to distribute the proceeds of sale as directed by the assignment among the creditors of the assignor. HELD :

This assignment was not fraudulent on its face. (p. 732.)

2. If, when the assignor provided in his assignment, that the stock of goods should be sold at *private* sale, he did so with the *bona fide* purpose of realizing for his creditors the largest amount possible, then this assignment is not fraudulent and void as against his creditors. (p. 726.)

3. But if the provision, that these goods should be sold at private sale, was inserted by the assignor believing at the time, that the interest of his creditors would thereby be prejudiced, and with a view only of furnishing remunerative employment to himself or to the assignee, and the assignee knew this, when he took possession of the stock of goods, then the assignment is fraudulent and will be void as against all the creditors of the assignor. (p. 733.)

4. But, if it was not fraudulent, when the assignee took possession of this stock of goods, it can never afterwards become fraudulent, so as to deprive the creditors secured by it of its benefit, by any conduct or combination of the assignor and assignee or either of them entered into subsequently. (p. 734.)

GREEN, JUDGE, furnishes the following statement of the case :

H. T. Earles, a merchant in Milton, Cabell county, West Virginia, failing in business on September 29, 1882, made the following assignment to A. D. Neal of Milton :

"Know all men by these presents, that I, H. T. Earles, merchant doing business at Milton, W. Va., have this day sold, assigned and delivered to A. D. Neal all that certain stock of general merchandise now in my store at Milton, consisting of dry goods, boots and shoes, hats and caps, clothing, notions, hardware, jewelry, &c., and all other things therein excepting the groceries and queensware sold to Parish and McKenney.

"The said Neal is to sell said goods at private sale as soon as possible, and with the proceeds, after paying expenses of sale, he shall pay—first, T. J. Duncan & Co. the sum of $314.00, to Allemong, Baer & Co. the amount I owe them, and if the

proceeds are not sufficient to pay both of the aforesaid claims, then they shall be paid *pro ratr*, neither having priority over the other.

"Secondly, after paying the above claims then the remaining proceeds shall be divided *pro rata* among my other creditors, viz: Geo. F. Conkling & Co., L. Z. Cadot & Co., Maddox Brothers, Jno. T. Halliday & Co., Loth, Hass & Co., Damrin & Co., Ball & Brothers, P. Whitlock, Hoochstadter Brothers and Jno. Dages & Co., and any other creditors, whose names have been omitted, as this assignment is made for the benefit of my creditors in the manner aforesaid.

"Witness my hand this 29th day of September, 1882.

"H. T. EARLES."

On the same day this assignment was acknowledged and recorded. The next day A. D. Neal, the assignee, took possession of the goods assigned and took an invoice of them. Most of the goods had been recently purchased, and their cost-price was $686.52. On the same day they were removed to another store in said town, the rental value of which was $5.00 a month; and the assignee commenced selling them at retail and continued so to do for some time, for how long does not appear, but for a less time than two months. While he was engaged in selling these goods, an execution was issued on a judgment, which John T. Halliday & Co. had recovered against H. T. Earles in the circuit court of Cabell county, amounting with interest and costs to $459.25. This was levied by the sheriff of Cabell county, A. Kyle, on this stock of goods in the hands of A. D. Neal, the assignee. He required an indemnifying bond, before he would seize and sell the goods, and this indemnifying bond was given to him executed by Wm. H. Harvey and Thomas H. Harvey. The sheriff then seized and sold the goods, for what price does not appear. He then for the use and at the costs of the assignee of the goods, A. D. Neal, brought suit on January 11, 1883, on the indemnifying bond against the obligors in it, W. H. Harvey and Thomas H. Harvey. They demurred to the declaration, but as this demurrer, which was overruled, has not been relied on in this Court, and as I see no defect in the declaration, I deem it unnecessary to state it more fully. The defendants also pleaded *non damnificatus* and a special plea,

that the title of this property was, when seized under the *fieri facias* by the sheriff, not in A. D. Neal, the assignee, but was in H. T. Carles and liable to be sold under this execution. These pleas were replied to generally and issues joined on them. On March 16, 1883, a jury was sworn to try these issues, who on March 19, found a verdict for the defendants. A new trial was asked by the plaintiff and refused by the court; and a bill of exceptions was taken by the plaintiff, which sets out all the facts proven and states that the indemnifying bond, which was in the usual form, was presented in evidence to the jury by the plaintiff, and all the facts above stated proven, and then it proceeds as follows :

"And the defendants, to maintain the issues on their part, proved that it would take from four to twelve months to sell a stock of goods like the one conveyed by said assignment at private sale, and that a public sale would be quicker, and higher prices could be realized, and that it would be worth $35.00 for a person's salary per mouth to sell them at a private sale at retail ; that when Earles made said assignment, he caused H. C. Simms, attorney for J. T. Duncan & Co., to scratch out the word ' public ' on said assignment where the provision was made for a public sale or private sale, and make the assignment read as it now stands; that the reasons given by said Earles for striking out the word ' public ' was that he thought Neal could make them bring more at a private than at a public one; that H. C. Simms, as attorney for said Duncan & Co., procured Earles to make said assignment ; that none of the other creditors knew of the assignment at the time of making the same except said Duncan & Co., and that W. H. Harvey went to said Earles a few days after he made said assignment, and that Earles told him he had about $200.00 in money which he had in his pocket, and that creditors could not get that; and that said Harvey acted as clerk when the sheriff sold said goods under the execution ; and that Earles was insolvent and owed $2,000.00 at the time of said assignment; and that the assignee Neal and he were going to sell at retail the said goods ; and proved that goods sold as prescribed in this assignment would not bring more than fifty *per cent.* of their value. And these were all the material facts proved by both sides.

" The plaintiff's attorney asked the following instruction to be given by the court to the jury :

" ' The court instructs the jury that the written assignment of Earles to Neal in this case is not fraudulent upon its face, and unless the defendants prove clearly that Earles made it for fraudulent purposes with intent to hinder, delay and defraud creditors, and that that fraudulent purpose and intent to hinder, delay and defraud creditors was known by A. D. Neal, the plaintiff, or by the creditors of said Earles secured therein at the time of said assignment, then it is not and can not be made fraudulent in any way or manner.'

" And the defendants, by their attorneys, objected to the giving of the same, and the court sustained the objections and refused to give the same to the jury ; to which ruling of the court in refusing to give said instruction the plaintiff excepted.

" And the defendants asked the court to give the following instruction to the jury : ' If the jury believe from the evidence that the assignment read in evidence to the jury was made by H. T. Earles with intent to hinder, delay or defraud any of his creditors, they should find for the defendants.'

" To the giving of which the plaintiff objected ; the court overruled plaintiff's objection and gave said instruction to the jury ; to which ruling of the court the plaintiff excepted.

"Thereupon the jury retired to their room to consider of their verdict, and afterwards returned into court with a verdict in the following words, to-wit :

" 'We, the jury, find for the defendants.'

"The plaintiff, by his attorneys, moved the court to set aside said verdict, because it was contrary to the law and the evidence in the case, and grant him a new trial. The court overruled said motion to set aside said verdict and grant a new trial and gave judgement upon said verdict against the plaintiff.

"To which ruling of the Court in refusing to set aside said verdict and grant a new trial, the plaintiff, by his attorneys, excepts and prays that this his bill of exceptions to all of the rulings of the court aforesaid, and each one thereof, may be signed, sealed and made a part of the record in this case, which is accordingly done."

The court on March 22, 1883, entered up a judgment, that the defendants recover of the plaintiff their costs about this suit expended including an attorney's fee of $10.00.

*Simms & Enslow* for plaintiff in error.

No appearance for defendant in error.

GREEN, JUDGE:

The only question arising in this case, which has been argued by counsel in this Court, is, whether the assignment executed by H. F. Earles to A. D. Neal dated September 29, 1882, transferring to him a stock of goods in the town of Milton to pay two preferred creditors and then to distribute the proceeds *pro rata* amongst all the creditors of the grantor was fraudulent on its face. Our statute of frauds provides, that "every assignment given with intent to delay, hinder or defraud creditors shall as to such creditors be void." Code chapter 74, section 1. To make an assignment void as to creditors under this statute, it is not sufficient that the *effect* of it is to delay or hinder creditors; for every assignment of a man's property however good and honest the consideration must necessarily hinder and delay his other creditors, for it diminishes the fund, out of which his creditors may obtain satisfaction of their debts. But, to render it void against them, it must be made with *intent* to delay, hinder or defraud them. (*Meux* v. *Howell*, 4 East 13; *Dance* v. *Seaman*, 11 Grat. 778.) But as the law presumes every man to intend the legal consequences, which must naturally flow from his voluntary acts, if on the face of an assignment there are provisions, which are contary to the public policy of the State established by statute-law or by the decisions of the court for the protection of creditors, and the effect of which is at the same time to hinder and delay creditors in a manner declared illegal by statute-law or by the decisions of the court, the law will conclusively presume, that the maker of such an assignment intended to hinder and delay his creditors by the insertion of such provisions in the assignment; and therefore the courts as a matter of law declare such assignments fraudulent on their face or as it is generally expressed, they are fraudulent *per se*.

Is the assignment in this case of that character? The courts in the different States of the Union have reached divers conclusions as to what provisions may be inserted in an assignment or deed of trust for the benefit of creditors without making it fradulent *per se.* I shall confine myself to the consideration of the provisions which may be inserted in such an assignment or deed of trust as to the management and mode of selling the property assigned without making it fraudulent *per se.*

The courts of the State of New York have probably gone further than those of any other State in the Union in holding such assignments and deeds of trust fraudulent on their face because of provisions inserted in them with reference to the management and sale by the assignee or trustee of the property assigned. They appear to have reached the conclusion, *that any provision inserted in such an assignment or deed of trust with reference to the management or sale of the property, which would delay the creditors of the grantor beyond the time, which they would necessarily be delayed by the mere fact that the property was placed in the hands of an assignee or trustee to sell for the benefit of the creditors secured, would make the assignment or deed of trust fraudulent per se.* As stated in *Dunham* v. *Waterman,* 17 N. Y. 9, the conclusion reached is, "that a debtor, who makes a voluntary assignment for the benefit of creditors, may direct in general terms a sale of the property and may also direct upon what debts and in what order the proceeds shall be applied; but beyond this he can prescribe no conditions whatever as to the management or disposition of the assigned property." See also *Jessup* v. *Hulse,* 21 N. Y. 168.

In accordance with this conclusion it is held in New York, that a power granted to the assignee or trustee to sell on credit made the assignment fraudulent *per se;* for this of course did delay creditors beyond the time for which they were *necessarily* delayed by putting their property in the hands of the assignee or trustee to be sold for the benefit of creditors. It is apparently now settled in New York accordingly, that an express power conferred on the assignee or trustee to sell the property on credit will render the assignment or deed of trust fraudulent *per se.* (*Barney* v. *Griffin,* 2 N. Y. 365, 371; *Nicholson* v. *Leavitt,* 6 N. Y. 510; *Burdick* v. *Post,* 6 N. Y. 522;

*Porter* v. *Williams*, 9 N. Y. 142; *Kellog* v. *Slawson*, 11 N. Y. 302; *Brigham* v. *Tillinghurst*, 13 N. Y. 215.) But in reaching this conclusion older decisions were overruled. (*Rogers* v. *DeForest*, 7 Paige 272; *Nicholson* v. *Leavitt*, 4 Sandf. 252.) But it may now be regarded settled law in New York, that the giving of an express power to the assignee or trustee to sell property on credit makes the assignment or deed of trust fraudulent *per se.* (*Gates* v. *Andrews*, 37 N. Y. 657; *Morrison* v. *Brand*, 5 Daly 40; *Rapalee* v. *Stewart*, 27 N. Y. 310.) And this conclusion seems to be a necessary consequence of what is regarded as the public policy of the State of New York with reference to the protection of creditors against delays in the collection of their debts by the act of the debtor. The fact that such a provision was made by the debtor in good faith to prevent a sacrifice of the property will make no difference. In accord with these views it was decided in *Dunham* v. *Waterman*, 17 N. Y. 9, that a provision in the assignment or deed of trust, that the assignee or trustee might continue the business of an iron-foundry, though intended as a means of realizing the trust-fund and with a a view merely of winding up the business, would render the assignment or deed of trust fraudulent *per se.* As a matter of course when the public policy is such, as is indicated by these decisions, a direction contained in an assignment, that the assignee should retail property on credit, would render the assignment fraudulent *per se.* (*Meacham* v. *Stearns*, 9 Paige 398.) But these extreme views even the courts of New York have been compelled to modify or evade. It was usual in that State and others to insert in such assignments or deeds of trust a provision, that the assignee or trustee should sell and dispose of the property " upon such terms and conditions, as in his judgment, he should think best and most to the interest of the parties concerned." It would seem very obvious, that a clause thus worded would authorize a sale on credit, and according to these New York decisions render the assignment or deed of trust fraudulent *per se.* It was accordingly so held in *Lyon* v. *Platner*, cited in *Woodburn* v. *Mosher*, 9 Barb. 255, but not reported. The court also in *Moir* v. *Brown*, 14 Barb. 39, thought, such a clause certainly gave a power to sell on credit; and in *Schufeldt* v. *Abernethy*, 2 Duer.

533, the court held that these words by necessary implication gave a discretionary power to the assignee to sell upon credit, and it therefore rendered the assignment on its face fraudulent and void.

But the court of appeals of New York and the Supreme Court of this State being, as it seems to me, unwilling to carry out to their full extent the views, which they had expressed, that any discretion expressly conferred on the assignee as to the mode or terms of sale would render an assignment fraudulent and void on its face, have held, that such a clause, as we have quoted above, did not authorize the assignee or trustee to sell on credit. (See *Whitney* v. *Krows*, 11 Barb. 198; *Southworth* v. *Sheldon*, 7 How Pr. 414; *Kellog* v. *Slawson*, 15 Barb. 56; Same Case, 11 N. Y. 302; *Nichols* v. *McElwen*, 21 Barb. 65; Same Case, 17 N. Y. 22.) In *Clark* v. *Fuller*, 21 Barb. 128, words empowering the assignee to sell and providing the sale might be made " in such manner as he shall deem best and most for the interest of the parties concerned," were held not to render the assignment fraudulent *per se* because they did not authorize a sale on credit. And in *Bellows* v. *Patridge*, 19 Barb. 176, the court, as if to avoid the consequences of holding every deed or assignment void and fraudulent on its face, which authorized a sale on credit, actually held, that when the assignment authorized the assignee " to convert the assigned property into money by sale either public or private as soon as practicable with due regard to the rightful interest of all the parties concerned, and in such a manner as might in the judgment of the assignee be for the best interest of the estate," it was not void and fraudulent *per se*, because the power, which was intended to be given was only a " rightful " or " lawful " power, and that if a power to sell on credit was not lawful, no such power was given. In *Brigham* v. *Tillinghurst*, 13 N. Y. 220, the court concludes its opinion thus : " The true rule to be observed is this : An insolvent debtor may make an assignment of all his estate to trustees to pay his debts with or without preferences; but such assignees are bound to make an immediate application of the property, and any provision contained in the assignment, which shows that the debtor at the time of the execution intended to prevent the immediate application, will avoid the

instrument, because it shows it was made with intent to hinder and delay creditors in the collection of their debts, such an intent expressed in the instrument or proved *aliunde* is fatal alike by the language of our statute and the well settled adjudication of the English and American courts."

The objection to this reasoning, which at once presents itself, is, that every assignment or deed of trust necessarily hinders and delays creditors and is made generally with the avowed intent of delaying and hindering them, and yet neither in New York nor anywhere else is such an assignment or deed of trust fraudulent and void if made with an honest purpose, such as preferring creditors, and if it contains no provisions deemed contrary to public policy. The reasons here assigned for holding an assignment fraudulent and void as to creditors would render every assignment for the benefit of creditors fraudulent; and this is not sustained by any decisions either American or English.

I have reviewed these New York cases in reference to what provisions in an assignment for the benefit of creditors with reference to the management and sale of the property assigned would make a deed fraudulent as to creditors, because the New York cases have been the principal cases relied upon by the defendant in error, and because they have had great influence on the decisions in the various states of this Union, especially of many of the northern states, though, as we will presently see, they have not been so generally followed in the decisions in the southern states. These decisions in reference to the effect in rendering fraudulent on its face an assignment for the benefit of creditors of a provision authorizing the assignee to sell the property on credit have been followed in Michigan, (*Sutton* v. *Hanford*, 14 Mich. 19); Minnesota, (*Greenleaf* v. *Edes*, 2 Minn. 264; *Truit* v. *Caldwell*, 3 Minn. 364); Illinois, (*Pierce* v. *Brewster*, 32 Ill. 268; *Bowen* v. *Parkhurst*, 24 Ill. 257); Vermont, (*Redfield, J. in Mussey* v. *Noyes*, 26 Vt. 462, 470; *Bennett, J. in Page* v. *Olcott*, 28 Vt. 465, 468, 469); and Wisconsin, (*Hutchison* v. *Lord*, 1 Wis. 286; *Haines* v. *Campbell*, 8 Wis. 187). The New York case of *Dunham* v. *Waterman*, 17 N. Y. 9, receives, it may be supposed, some support from the case of the *Exchange Bank* v. *Inlon*, 7 Md. 391, though, as we shall hereafter see, this case is really based upon different principles.

But even in states, where there has been shown a disposition to follow the New York decisions, they depart from the fundamental principles, on which, as I conceive, the New York cases I have cited are based, that is, that *in providing for the management and sale of the property assigned no provisions can be made in the assignment, which will delay creditors beyond what necessarily results from the property being placed in the hands of trustees for the purpose of paying creditors of the grantor; and therefore a debtor, who makes a voluntary assignment for the benefit of creditors, may direct in general terms a sale of the property and may also direct upon what debts and in what order the proceeds shall be applied; but beyond this he can prescribe no conditions whatever as to the management or disposition of the assigned property.*

Now it has been very generally held even in States, which generally follow the New York decisions, that, when as in the case before us the property of the debtor is insufficient to pay his debts, the desire to protect it from sacrifice and have it realize as much as possible is not inconsistent with fair dealing and honesty, and instead of violating the policy of the law or the rights of creditors is in harmony with both and exempt from the charge of fraud. (*Angell* v. *Rosenburg*, 12 Mich. 241, syllabus and page 264; *Burt* v. *McKinstry*, 4 Minn. 215; *Guerin* v. *Hunt*, 8 Minn. 490.) Even in New York I find no cases controverting these views; but on the contrary I find cases supporting them. *Ely* v. *Cook*, 18 Barb. 614; *Ogden* v. *Peters*, 15 Barb. 564. I have been able to find no expressions of opinion anywhere to the contrary of these views except in a single instance in *Vernon et al.* v. *Martin & Smith*, 8 Dana, 171, of first edition. Page 264 of second edition, Judge Ewing says: " When it appears on the face of a deed of trust the motive of making it was to prevent a sacrifice of the property, a bad motive is shown and a motive to obstruct the ordinary process of law in the subjection of property to the payment of debts, which vitiates the whole deed; and so if the motive and intention be proved *aliunde.*" When however this is read in connection with the balance of Judge Ewing's opinion, the fair inference is not, that the deed would be necessarily vitiated by a provision, which was inserted to prevent the sacrifice of the property, for in that case he upheld

the deed as valid and not fraudulent, though there was in it a provision evidently intended by the grantor to prevent a sacrifice of the property, the provision being for selling by retail the stock of goods conveyed. All that Judge Ewing probably meant by what is above quoted is, that the deed would be vitiated and would be fraudulent if the only motive the grantor had in making the deed at all was not to secure creditors but simply to prevent his property from being sacrificed by a sale under execution. These cases however show, that when by the manner of the sale there appears on the face of the deed an intent to prevent the property from being sacrificed, when the property conveyed was sufficient to pay all the debts, so that the creditors could not be benefited by the delay thus produced but only the debtor, to whom the surplus would be coming, then such provision would be fraudulent and would vitiate the deed. I need express no opinion on this last point, as the property in this case appears on the face of the deed to be insufficient to pay all the debts.

The decisions above cited are reconcilable with the fundamental basis of the New York cases which we have before cited. For if the principles laid down in them were followed, any provision in the assignment, which, in order to prevent a sacrifice of the property, provided any other mode of sale than a public sale for cash, would make the deed fraudulent on its face; but the reverse was held in these cases.

Applying these to the case before us, the property of the debtor, W. T. Earles, being as appeared on the face of the assignment of September 24, 1882, insufficient to pay his debts, the effort to protect it from sacrifice by the insertion of the provision, that the assignee, Neal, should sell the goods transferred at private sale, was not inconsistent with fair dealing and honesty, and instead of violating the policy of the law or the rights of creditors, it is in harmony with both and exempt from the charge of fraud. This is the only provision in this assignment, which, it is claimed by the counsel for the defendant in error, renders it fraudulent on its face. We have seen, that in several of the northern States it is held, that an express power to sell on credit on the face of an assignment is held to make the assignment void and fraudulent on its face; but such a power is very commonly inserted in

such assignments in many of the southern States; and in many of these States it is held, that such a power does not render a deed of trust or assignment fraudulent on its face. This is held in Maryland (*Farquharson* v. *Eichelberger*, 15 Md. 63;) in Missouri (*Johnson* v. *McAllister's assignee*, 30 Mo. 327), in Texas (*Culton* v. *Baldwin*, 22 Texas 724), and in Virginia (*Dance* v. *Seaman*, 11 Grat. 778, 785; *Skipwith* v. *Cunningham*, 8 Leigh, 273, 274.) And in some northern States a power given to the trustee to sell on credit will not *per se* vitiate a deed of trust. (*Conckling* v. *Conrad*, 6 Ohio St. 611; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Billings* v. *Billings*, 2 Cal. 107, 114.) These decisions are in direct conflict with the numerous New York cases which we have before cited.

There can be no question, that a deed of trust in this State will not be fraudulent *per se*, because the trustee is authorized to sell on credit. The policy of Virginia in regarding such a power as not vitiating a deed of trust has not only been adopted in this State, but we have gone still further and by statute, chapter one hundred and forty, section six of the Acts of 1882, provided that, when the deed is silent as to the terms of sale, it shall be made by the trustee for one-third cash, and the residue in two equal payments to be paid in one and two years from the day of sale. Thus there is a marked contrast between our policy and the policy of many northern States with reference to the propriety of authorizing a trustee in a deed of trust to sell on credit. This diversity between our policy and that of certain northern States must to a greater or less extent lessen the weight, which we would otherwise attach to the decisions in such States as to what provisions in an assignment or deed of trust for the benefit of creditors render it fraudulent *per se*, that is, render it void because it is in violation of the public policy of the State. There are, as far as I have been able to find, comparatively few cases, where there has been any expression of opinion as to the effect of expressly authorizing a trustee in an assignment or deed of trust for the benefit of creditors to sell at private sale. There is no question, but that, if the assignment or deed of trust is silent as to the mode of sale, the trustee can sell for cash or on reasonable credit upon the ordinary principles, which form the duty of the trustee. (*Hoffman* v. *Mackall*,

5 Ohio St. 124;) and, therefore, it seems to me, there ought not to be an objection anywhere to authorizing expressly a trustee to sell for cash or on a reasonable credit. It has been generally held that a power may be given to a trustee to sell at either public or at private sale. (*Halstead* v. *Gordon*, 34 Barb. 422; *Sackett* v. *Mansfield*, 26 Ill. 21; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Nye* v. *Van Husun*, 6 Mich. 329;) and in Virginia and this State the courts have gone further and held, that a provision in a deed of trust to secure creditors that the trustee may continue the business and replenish the stock, if intended merely as a means of realizing the trust-fund and with a view of winding up the business, is not fraudulent *per se* so as to avoid the deed. (*Marks et al* v. *Hill et al.* 15 Grat. 400; *Harden* v. *Wagner*, 22 W. Va. 357, syl. 8; *Williams et al* v. *Lord & Robinson et al*, 75 Va. 401, paragraph 5.) This goes further than holding that a provision in a deed of trust, that the trustee might sell at private sale avoids the deed as fraudulent *per se*. It permits him not only to be authorized by the deed of trust to sell the goods conveyed at private sale, but it permits him to be authorized to sell them at retail, thus authorizing him to continue the sale for an indefinite time. I do not doubt, that, if in the performance of this duty he either acted in bad faith or showed himself incompetent to sell out the goods, wares and merchandise conveyed to him in a reasonable time, a court of equity could interpose and substitute some honest and competent person to perform this duty.

In Doe *Ex Dem.*, *Shackleford* v. *The Planters and Merchants Bank of Mobile*, 22 Ala, 238, syl. 2, and p. 244, it was held, that a provision in a deed of trust conferring upon trustees "a just and reasonable discretion as to selling at private or public sale for cash or upon time with ample security," does not render the deed fraudulent on its face. In *Benjamin Burgin* v. *James Burgin*, 1 Ired. Law 453, syl. 3, it was held, that it was no ground for a court to pronounce a deed of trust fraudulent *per se* as against creditors, that the property conveyed was to be sold at private sale." So in *Shipwith's executor* v. *Cunningham*, 8 Leigh, 273, 274, the deed of trust executed by Richard M. Cunningham to Richard W. Boadnax and Charles F. Osborne, trustees, dated October 13, 1827, that the trustees might " sell the property either publicly or pri-

vately, in whole or in part as they might deem best, and on a credit of twelve months, or such other terms as they might deem most expedient." This deed of trust was assailed as fraudulent on its face, but not because of this provision. The court held that it was not fraudulent; and it was tacitly agreed that the provisions we have quoted were unobjectionable. But a power expressly given to " sell the goods, wares and merchandise *gradually* in the manner and on the terms, in which in the course of their business the grantors, merchants, had sold and disposed of their merchandise," was held in *American Exchange Bank* v. *Inloes*, 7 Md. 391, fraudulent on its face and to be regarded by the court as a device expressed on the face of the deed, whereby the grantors, sought through the instrumentality of a trustee, to carry on the business of the concern in the same manner, in which it had been before conducted, and for an indefinite period, free of all control or interference on the part of the creditors. The court says, pp. 391, 392 : " There are cases, it is true, in which deeds of trust for the benefit of creditors have been sustained as valid, which contain provisions for the continuance of the business of the debtor or grantor by himself or by his assignee or trustee. (*Jones* v. *Whitbread*, 5 Eng. Law & Eq. Rep. 431; *Mun* v. *Wilsmore*, 8 Tenn. Rep. 521; *Cunningham* v. *Freeborn*, 11 Wend. 240; *DeForest* v. *Bacon*, 2 Conn. 633; *Cundal* v. *Carpet Company*, 13 Conn. 383; *Hitchcock* v. *Cadmus*, 2 Barb. S. C. Rep. 381; *Foster* v. *Saw Company*, 12 Pick. 451; *Woodward* v. *Marshall*, 22 Pick. 468; *Ravisies* v. *Alston*, 5 Ala. Rep. 297.) But it will be found on examination of the cases, that most, if not all of them, rest upon the important principle, not applicable to the present case, that the stipulation in question was designed more effectually to promote the interest of the creditors, and not intended for the benefit of the debtor; or when it was intended to be auxiliary in the winding up of the debtor's business, as when he had on hand at the time of the assignment unmanufactured material in the way of his business or the like."

The case before us differs, it seems to me, most materially from this Maryland case. In that case the deed provided, that the trustee might sell the goods, wares and merchandise at retail and on credit as the grantors, merchants, had pre-

viously done.   This was the meaning given to the language of the deed by the court (p. 389–390 ) and the court evidently regarded it as a mere device to carry on indefinitely their business in the name of a trustee of their own selection.   If this was the fair deduction from the language of the deed, then the court could not well do otherwise than to pronounce it fraudulent on its face.   In our case the assignment provides, that the assignee shall sell the goods at *private sale* as soon *as possible.*   This is strikingly different from the deed in the Maryland case.   The assignee in the case before us might have sold out the entire stock of goods the next day, if he could have found a purchaser at a fair price ; and this, it was not improbable, he might have done.   Another merchant engaged in business might well be willing to give for this stock of goods more than it would have sold for at public auction for cash ; and if the assignee had found such a purchaser, it would have been his duty to sell to him the whole stock of goods ; for the deed directs him to sell them privately and as *soon as possible.*   The Maryland deed did not by its terms permit a sale at once of the goods.   By its terms they could only be disposed of at retail and that too for cash or on credit; and the assignee was forbidden to sell them at once, if he could get a purchaser at a fair price, but he was required to sell these goods *gradually.*   The court interpreted this as showing, that it was only a device, whereby the grantors proposed to conduct their business, as they had done, by simply using the trustee as an agent.   Hence they pronounced the deed as fraudulent.   But it would be a most unfair deduction to construe the assignment in the case before us as a device on the part of the grantor to continue his business, just as he had done, only using the name of the grantee. We have seen that an authority to sell the property conveyed where a stock of goods or any other kind of property privately is not *per se* in this State or Virginia fraudulent, even where the authority authorizes the trustee to sell on credit. This assignment only authorizes the trustee to sell privately and directs this to be done as soon as possible.   This provision seems to me to have been obviously inserted in this assignment for the benefit of the creditors and not as in the deed of trust in the Maryland case simply to hinder and de-

lay them. The grantor evidently thought, that a public sale of their stock of goods might result in a sacrifice and a loss to his creditors; for it must be borne in mind, that this assignment shows on its face, that the grantor regarded this stock of goods as entirely insufficient to pay his debts secured by it. This, we have shown, according to all the authorities fully justified him in inserting a provision intended to prevent a sacrifice of the property; for under such circumstances it could not but be considered, that he was looking in making such provision principally, if not entirely, to the benefit it would confer on his creditors; and this was not only not fraudulent but praiseworthy.

The assignment does not show accurately the character of his stock of goods, except that it consisted of "dry goods, boots and shoes, hats and caps, clothing, notions, hardware, jewelry", &c.; a general stock of merchandise excepting groceries and queensware, which had been sold to Parish & McKinney. It seems to me but a resonable expectation on the part of the grantor, that the assignee might in a short time find a purchaser of all this stock of goods—might dispose of them to some merchant at a fair price, just as he himself had sold his groceries and queensware. Nor do I see, that this was such a remote possibility, that we can fairly conclude, that it was intended, that this stock of goods should be sold by the assignee only at retail. The assignment does not so provide as it does in the numerous cases above referred to.

My conclusion therefore is, that the assignment made by H. L. Earles on September 29, 1882, is not fraudulent on its face. The court therefore erred in refusing to grant the instruction asked by the counsel of the plaintiff below. It should have been granted with a slight modification. The form, in which it should have been granted, is this: "The court instructs the jury, that the assignment of H. T. Earles to A. D. Neal dated September 29, 1882 is not fraudulent on its face, and unless the jury believe from the evidence, that H. T. Earles, when he executed this assignment, did so with intent to delay, hinder or defraud his creditors, and that this intent on his part was known to A. D. Neal, when he took possession of these goods, wares and merchandise, then the

assignment is not fraudulent in fact so as to entitle the defendants by reason thereof to a verdict." The court also erred in granting the instruction asked for by the counsel for the defendants without modification. It too should have been modified by the court and then granted in this form: "If the jury believe from the evidence, that the assignment of H. T. Earles to A. D. Neal dated September 29, 1882, was made by H. T. Earles with intent to delay, hinder or defraud any of his creditors, and that, when A. D. Neal took possession of these goods, he knew of this intent on the part of H. T. Earles, then the plaintiff can not recover by reason of the execution of this assignment." The verdict of the jury on the plaintiff's motion for a new trial ought to have been set aside by the court below and a new trial awarded, because of these errors committed by the court in refusing to modify the plaintiff's instruction and grant the same so modified and in granting the defendant's instruction without modification, as the jury were probably misled by these errors of the court. And this Court after reviewing the judgment of the court below must set aside the verdict of the jury and grant a new trial.

As the case then must be tried over, I deem it improper for this Court to express any opinion as to the evidence, as a different case may be presented to the jury at the next trial. I will only say, that, if on the evidence on the next trial the jury should believe, that H. T. Earles had the direction formerly in this assignment that A. D. Neal should sell these goods, wares and merchandise at public or at private sale altered so as to direct the goods to be sold at private sale only with the *bona fide* purpose on his part to prevent the sacrifice of the goods and with the *bona fide* purpose of realizing the largest amount possible for the creditors, then the assignment is neither *per se* fraudulent nor fraudulent in fact, nor would the fact, that the jury might believe, that H. T. Earles was mistaken in his opinion, that the selling of these goods at private sale would be promotive of the interest of his creditors, vary the case or justify them in finding this deed to be fraudulent. But if on the other hand the jury from the evidence should find, that H. T. Earles in making this change in the assignment did so not with the intent or belief, that he

would thereby prevent a sacrifice of these goods and promote the interest of his creditors but with a belief, that they would be thereby prejudiced, and that either he or A. D. Neal would be benefited at the expense of his creditors by giving them or either of them remunerative employment, and if this intent and purpose of H. T. Earles was known to A. D. Neal, when he took possession of these goods, wares and merchandise, then the jury ought to find, that this assignment was fraudulent in fact and inoperative to confer any title on A. D. Neal as against any of the creditors of H. T. Earles. But if this assignment was not fraudulent at the time A. D. Neal took possession of these goods, wares and merchandise, no action or conduct of A. D. Neal or of H. T. Earles after that could make it fraudulent, nor could any combination between them made subsequent to A. D. Neale's taking possession of the goods to continue the sale of these goods at retail in order to furnish them profitable employment at the expense of the creditors of H. T. Earles render the assignment fraudulent or entitle the defendants on that account to a verdict.

The judgment of the circuit court of Cabell county of March 22, 1883, must be set aside, reversed and annulled; the plaintiff in error must recover of the defendants in error his costs in this Court expended; and this Court must set aside the verdict of the jury and award the plaintiff a new trial, the costs of the former trial to abide the result of the suit; and this case must be remanded to the circuit court of Cabell county to be proceeded with according to the principles laid down in this opinion and further according to the principles governing courts of law.

REVERSED. REMANDED.