[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 217 
The question to be decided is whether the assignment of Clark Tillinghast is void on its face. The assigned property consists of real and personal estate which is conveyed to trustees to be disposed of by them and the proceeds applied to the payment of the debts of the assignor, in the order named in the instrument. By our laws trusts may be created to sell property for the payment of debts. But these trusts, when created and declared, must be capable of being executed in the manner specified in the instrument creating them without contravening any statute or settled principle of the common law. One of these, which restricts and controls the creation and execution of trusts to *Page 218 
sell property for the benefit of creditors, is that provision forbidding sales, assignments and transfers made for the purpose of hindering or delaying creditors in the collection of their debts.
The right of the assignor to authorize his trustees to convert his property into "available means," is the only question which I propose to examine. It has been held by this court in Nicholson
v. Leavitt (2 Seld., 510), that an assignment which authorized the assignees to sell the assigned property on credit, was fraudulent and void. Does this assignment come within the principle of Nicholson v. Learitt? "Available means," in its broadest signification, includes money as well as notes, bills of exchange, c.; but in its ordinary sense, especially when used as contra-distinguished from money as it clearly is in the assignment under consideration, it must be understood as meaning notes, bills of exchange, drafts, stocks and other choses in action. But these are not money. They are only rendered available or turned into money by paying the necessary discount, and this is not always a fixed rate, but depends upon the place where the exchange is to be made and the state of the market at the time of the transfer. Webster defines the noun "means" as follows, viz: "Income, resources or estate." Qualified by the adjective available, it must be held to include all that numerous class of securities which are known in the mercantile world as representatives of value easily convertible into money, but not money. With this view of the meaning and intent of the term "available means," I have no doubt that the trustees under this assignment would be authorized to sell all or any portion of the assigned property on credit, and take in payment notes, bonds, mortgages or other available means, even if they would not be authorized to exchange it for other property. The language here used should be taken in its ordinary signification, and each word should have its usual force. *Page 219 
"Available means," among mercantile men, is a term well understood to be anything which can readily be converted into money. But it is not necessarily nor primarily money itself. Nor could it have been so understood by the assignor in this case. For if it had been, there would have been no necessity of adding after "money," "or available means." To the very able and conclusive reasoning of Judge Gardiner in the case of Nicholson
v. Leavitt, showing that if a trust to sell on credit is valid, the court has no power to convert the securities thus taken into money, I shall not attempt to add. It was concurred in by the whole court, and met the unanimous approbation not only of the profession but of all that portion of the community that is not interested in having the time of payment of all debts postponed beyond the period fixed by the agreement of the parties.
The principle of the case of Kellogg and others v. Slausonand others (1 Kernan, 302), may, at first sight, be supposed to sustain the assignment now under consideration. But a close examination will show that the court held that though the assignees were, by the language of the instrument under consideration in that case, vested with a discretion to dispose of the property "on such terms as in their judgment might be best for the parties concerned, and convert the same into money," that this did not necessarily nor by fair implication, authorize them to sell on credit. On the contrary, the "terms," c., were held to apply to the manner of sale as public or private, in large or small quantities, c., while the direction to "convert the same into money" contained at the end of the sentence, was held to limit the disposition of the property to a sale for cash. The case in this view does not in any manner conflict with that ofNicholson v. Leavitt, nor did the court mean to disturb the salutary rule there established. This is evident from the fact that the learned judge who delivered the opinion of the court inKellogg v. Slauson, cited; Woodburn v. Mesher (9 Barb.S.C.R., 255), and Murphy v. Bell (8 How. P.R., *Page 220 
468), where it was held that a permission to the assignees to convert the assigned estate into money "within such convenient time as to them should seem meet" avoided an assignment, because it implied an authority to sell on credit.
The true rule to be observed is this: An insolvent debtor may make an assignment of all his estate to trustees to pay his debts with or without preferences; but such assignees are bound to make an immediate application of the property. And any provision contained in the assignment which shows that the debtor, at the time of its execution, intended to prevent such immediate application will avoid the instrument, because it shows that it was made with "intent to hinder and delay creditors in the collection of their debts." Such an intent expressed in the instrument or proved aliunde, is fatal alike by the language of our statute and the well settled adjudications of the English and American courts. The assignment of Clark Tillinghast, as we feel bound to interpret it, being obnoxious to this objection, the judgment of the supreme court must be reversed, and a new trial ordered.
All the judges concurred.
Judgment accordingly.