Dickman, J.'
The unincorporated association known as The Union Pork-house Company, is to be regarded as merely a copartnership, and subject to the rules governing that branch of the law. It did not lose its real nature as a partnership because certain of its members were constituted directors, and its members were called stockholders, and a constitution and by-laws were adopted, and the number of its members was large. It might be deemed expedient to appoint directors to act as the special agents for managing the affairs of the company, instead of leaving each member, as in an ordinary partnership, to act as a general agent for the transaction of business in the ordinary way. The company, too, might be a partnership, although its capital stock be divided into shares, which, by the articles of association, are made transferable on the books of the company. The constitution and by-laws adopted by the shareholders are analogous to articles of copartnership, and are of equal binding force in fixing the relations of the shareholders to each other, and in shaping and governing the business of the company. The *527 company or partnership involved in the present inquiry, was organized with a capital stock of $10,000 (afterwards increased to $15,000), consisting of one thousand shares of ten dollars each, transferable on the books of the company. All the original stock was subscribed or guaranteed before the organization of the companj'-, but no additional stock was ever subscribed beyond the original. $10,000, and of the amount subscribed, only' the sum of $8,500 was ever collected.
The constitution of the company made it the duty of the directors to have charge of the company’s business, to carry out the objects for which the company was organized, and to see that the interests of the stockholders and company were protected. And by article 8th of the by-laws it is provided that “ the directors of the company shall not adopt plans of buildings, or make contracts, or create indebtedness beyond the available capital of the company.” This provision, so obviously designed for the protection of the stockholders against an unauthorized and extravagant expenditure of money by the directors, has never been repealed, amended, changed or modified, and still remains in full force.
The directors purchased land, and caused a slaughter and pork-packing house to be erected thereon. Between the time they began work and the first day of December, 1875, as appears from the findings of fact, they had incurred liabilities to the amount of twelve thousand four hundred and seventy-nine dollars and forty-two cents. They had collected up to that date only the sum of seven thousand two hundred and fifty-five dollars, and had thus created a debt or liability beyond the available capital of the company. And this additional indebtedness had been created, contrary to one of the by-laws, without consultation with other stockholders, and was first brought to the attention of the other stockholders at a called meeting held on the first day of December, 1875.
Subsequently to the last named day, the total cost of the land and building alone reached the sum of fourteen thousand eight hundred dollars; and the total expenditure by *528 the directors, including insurance and taxes, amounted to fifteen thousand eight hundred and seventy-five dollars.
By reason of such expenditure in excess of the capital stock paid in or subscribed, it was found by the circuit court, that after applying the proceeds of sale on the foreclosure of the mortgage made to the directors on the company’s real estate, there was due and owing to them the sum of seven thousand eight hundred and twenty-one dollars and seventeen cents, and that after the amounts due upon the unpaid subscriptions of solvent stockholders have been applied to the payment of that sum, the remainder should be paid by all the solvent members of the copartnership, including the directors, each contributing in the proportion of the number of shares held by each to the whole amount of such indebtedness.
The solvent shareholders should doubtless be held to pay the amount of their unpaid subscriptions. Their obligation to pay the amount of their shares as capital, may be treated as assets like other legal claims belonging to the company. But such unpaid subscriptions were not, as it proved, available capital of the company, upon which the directors might rely in making contracts and incurring liabilities. Available capital, like “ available means,” is a term well understood to be any assets that can be readily converted into money. Brigham v. Tillinghast, 13 N. Y. 215.
When the directors, finding they were able to collect only eight thousand and five hundred dollars of the stock, proceeded to contract an indebtedness largely in excess of the available capital of the company, and in disregard of a plain provision of an unchanged by-law, their action, as between the partners, was binding only uuon those who either assented beforehand" to the creation of the indebtedness or ratified it after it was incurred. In general, the act of one or more partners in contravention of the partnership articles in a substantial point, cannot, as among the members of the firm, bind the non-assenting partners.
One of the most obvious duties and obligations of all partners is, strictly to conform themselves to all the stipula *529 tions contained in the partnership articles. In respect to the extent of the partnership as stated in the articles, courts of equity construe the articles strictly, and do not permit the business to be extended by any of the partners without the consent of all of them. Story, Part., §§ 178, 193. In the management of the interior concerns of the partners among themselves, the weight of authority is in favor of the power of a majority of the firm, acting in good faith, to bind the minority in the ordinary transactions of the partnership, and when all have been consulted. 3 Kent’s Com., 45. But unless special provision in the articles of association be made to the contrary, this right of the majority does not extend to the right to set aside, or materially change any of the articles of the partnership. In effecting such a change, or in substantially violating any of the articles, it is essential that all should unite; otherwise, it is not obligatory upon them. Colly. Part., 3d Am. ed., 182. In no case can the majority bind the minority inter sese to anything expressly stipulated against in the contract, or which is not fairly within the scope of the partnership business, and that cannot be considered within its scope which in any respect is subversive of the fundamental agreement. Abbott v. Johnson, 32 N. H. 9; 1 Wood’s Colly. Part., § 155, p. 285 n.
In Davies v. Hawkins, 3 Maule & Sel. 488, a company was formed for brewing ale, and by deed they confided the conduct of the business to two persons, who were to be trustees of the company. General quarterly meetings of the company were to be held. It was resolved by the King’s Bench, that one person only could not be appointed at a general quarterly meeting in place of the two originally appointed under the deed, unless such alteration was made with the consent of all the subscribers. Lord Ellenbokough said, that “ a change had been made in the constitution of this company, which could not be made without the consent of the whole body of the subscribers. It was such a substituted alteration in its constitution as required the consent of all.”
The right of contribution and indemnity between parties grows, in a large measure, ‘out of the agency of the partner *530 seeking reimbursement. Each member, as an agent of the firm, is entitled to be indemnified by the firm, against liabilities bona fide incurred by him while pursuing the authority conferred upon him by the agreement entered into between himself and his copartners; but he has no right to claim contribution from .the other members of the firm, for liabilities incurred in disregard of the authority thus reposed in him. It devolves upon agents and trustees who seek indemnity from their principals and cestuis que trustent, to show that they have not acted contrary to their instructions, for on principle they will not he entitled to any indemnity or reimbursement for losses and expenses incurred while so acting. And this rule has been applied to directors of companies. In The Worcester Corn Exchange Company’s Case, 3 De Gex, Mac. & G. 180, a company was organized for the purpose of building a corn exchange. The deed of settlement of the company limited the amount of each shareholder’s subscription, and authorized the directors to create new shares, and to raise the money hy borrowing, under certain restrictions. The capital of the company being expended, and more money being required, the directors advanced money themselves, and expended it in payment of debts of the company. They also, hut in excess of their powers, borrowed money of a bank which had notice of the company’s deed. It was held that the directors were not entitled to charge the shareholders, either in respect of the advances, or in respect of the bank debt, beyond the amount of the capital which each shareholder had agreed to subscribe. And this decision is. pronounced to be, “ strictly in conformity with the sensible rule that agents are not entitled to any indemnity from their principals in respect of unauthorized expenditures.” 1 Wood’s Colly. Part., 495.
But we are reminded that the constitution and by-laws of The Union Pork-house Company provide, by article 11 of the one and article 9 of the other, that either the constitution or by-laws “ may be altered or amended at any regular meeting by a two-thirds vote of all stockholders represented at said meeting.” And it is urged in argument, that not *531 withstanding article 8 of the by-laws restraining the action of the directors has never been altered or amended, yet, the shareholders, at certain extra but not regular meetings, by a vote sufficient to alter or amend that section, virtually assented to and ratified the acts of the directors in creating an indebtedness beyond the available capital of the company, by authorizing them to borrow money and directing a mortgage on the company’s property to idemnify them against loss. But the object of a change in the by-laws is not to be attained by an indirect, irregular, and unauthorized method, calculated to mislead the shareholders. The shareholders had the right to rely upon the inviolability of the constitution and by-laws, unless changed in the manner prescribed. Until the by-laws to restrict the directors in the expenditure of money should be changed in the mode provided, to wit: by a two-thirds vote of all the stock represented at a regular meeting, of which due notice had been given, and held on the first Thursda}r of March or September, the directors would be confined within the bounds of the available capital of the company, and in transgressing those bounds, would, we think, be entitled to no contribution or reimbursement from non-assenting shareholders or partners who had paid their subscriptions. If it is proposed to make an alteration in the partnership articles by an agreement which shall be binding on all parties, notice of the proposed change and of the time and place at which it is to be taken into consideration ought to be given to all partners. Const v. Harris, 1 T. & R. 496. For, even if the change is one which it is competent for a majority to make against the assent of the minority, all are entitled to be heard upon the subject; and unless all have an opportunity of opposing the change, those who object to it will not be bound by the others. 2 Lind. Part., 2d Am. ed., 410.
Recurring, however, to the court’s findings of fact in reference to the extra meeting of December 1st, 1875, when a resolution was adopted authorizing the directors to finish the building and borrow money to pay off the indebtedness; and the extra meeting of September 26th, 1876, when the mat *532 ter of paying off the indebtedness, and completing the building was considered; and the extra meeting of December 28d, 1876, when the trustee was authorized to execute and deliver a mortgage to secure the directors from loss on account of their individual liability on the indebtedness, it does not appear how many shares of stock were represented at any one of those meetings, or whether any resolution was adopted by a two-thirds vote, or whether any notice was ever given to any shareholder, informing him that an alteration or amendment of any of the by-laws would be taken into consideration.
Furthermore, where a member of a firm materially violates the articles of copartnership, and claims contribution and indemnity from his copartners for the losses and expenses to which he has thereby been subjected, it will be incumbent upon him to show assent or ratification of his acts by his copartners before he can recover of them. In the findings of fact it is not disclosed that the plaintiffs in error, or any of them, ever expressly assented to the creation or payment of any of the indebtedness contracted by the directors. Indeed, the court evidently did not regard such assent necessary to bind the other shareholders. For, the court found, that a stockholder who was never present at any meeting when the indebtedness was made known or talked of, who never attended any meeting after he heard of the indebtedness, and who expressed his dissatisfaction at the creation of the debt; that a stockholder who never attended any of the meetings, never heard of the indebtedness until the commencement of the original action, and never expressly assented to it; and that a stockholder who attended a meeting when the indebtedness was made known, but voted against paying it, and never expressly assented to it, should each, nevertheless, be holden to contribute toward the reimbursement of the directors. The fact that the shareholders received notice of the meetings and failed to attend, seems to have been deemed adequate to bind them. But, the directors having disregarded an important article of the bylaws, essential to the safety and protection of the company, *533 and thereby created an indebtedness beyond the company’s available capital, a shareholder who did not see fit upon notice, to attend a meeting called by those directors to consider their own neglect of duty, should not therefore be concluded by the action of those stockholders present who ratified the unauthorized acts of the directors.
In our view the conclusions of law, and the decree of the circuit court are not altogether sustained by the facts as found by the court; and those of the plaintiffs in error who did not, in any other manner than by failure to attend the meetings of the stockholders when notified, assent expressly or by necessary implication, to the creation or payment of any of the indebtedness incurred by the directors, should not be required to contribute toward the payment of such indebtedness, after paying the amount due upon their respective subscriptions. We think, therefore, that a judgment should be rendered for the plaintiffs in error upon the facts found, in conformity with the foregoing opinion of the court.

Judgment accordingly.